STATE

v.

**Ronald LEDDY.**

No. 87–402–C.A.

Supreme Court of Rhode Island.

March 20, 1989.

James E. O'Neil, Atty. Gen., Jane McSoley and Annie Goldberg, Asst. Atty. Gen., for plaintiff.

Catherine Gibran and Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

KELLEHER, Justice.

The defendant, Ronald Leddy (Leddy), was convicted by a Superior Court jury of having committed a robbery. Leddy contends that the trial justice committed two errors that mandate a new trial. Before considering the alleged errors, a brief summary of the facts is in order.

On December 23, 1985, the Appliance Parts Company (Appliance) on Cranston Street in Providence was robbed. The robbery occurred just before 5 p.m. when only the manager and an employee were in the store. The manager testified that he was in his office counting the day's receipts when he heard a buzzer sound, indicating that the front door of the store had been opened. He looked up and observed a six-foot-tall white male with dirty-blond hair enter the store. The manager stated that after he had walked up to the service counter, he asked the individual if he could help him. The individual drew a gun, held it to the manager's head, and demanded money. After the robber was given $663 in cash, he

ordered the manager and the employee to lie on the floor until he made his departure. The manager described the gun used during the robbery as "[n]ot real shiny," "[l]ike a dull nickel-plate" with "little pits and rust spots" on the right-hand side.

The employee's testimony was in substantial agreement with the manager's in all material areas. He, however, made an in-court identification of Ronald Leddy as the robber. The employee also testified that he had selected Leddy from a police lineup held on January 25, 1986.

The employee's girlfriend was also called as a witness. She stated that she was driving in the vicinity of Appliance just before 5 p.m. on December 23, 1985, waiting for her boyfriend, when she noticed an individual running from the store. Thinking the runner was her boyfriend, she followed him. The individual quickly rounded a corner and entered a tan Plymouth bearing Rhode Island registration plate No. GI 957. The Plymouth, with its motor running, came equipped with a driver. Once the runner entered the Plymouth, the vehicle sped away from the area.

Leddy's mother appeared as a witness for the prosecution. She admitted that she was the owner of the tan Plymouth with the Rhode Island registration GI 957. However, to the best of her recollection, the vehicle had been parked in her driveway at all material times on the afternoon in question while the vehicle's keys remained in her pocketbook.

At a pretrial suppression hearing John MacAndrews (MacAndrews), a member of the detective division of the Providence police department, testified that he was on duty the evening of January 24, 1986, when, at approximately 10 p.m., he received a radio message concerning a shooting that had occurred in the city's Manton area. According to the dispatch, the perpetrator was a white male, approximately six feet tall, with dirty-blond hair and wearing a green jacket. The dispatcher also admonished that the suspect was believed to be armed.

In responding to the broadcast, MacAndrews first searched the streets in the area of the shooting. When this search of the streets produced no suspects, MacAndrews decided to check the neighborhood bars. He testified that upon entering a bar on nearby Atwells Avenue, he observed an individual who matched the description given by the dispatcher. MacAndrews's attention had been drawn to this individual because he appeared to be much younger than the rest of the bar's clientele.

MacAndrews, believing the suspect was armed, decided to return to his car to call for a "backup." Once two uniformed officers arrived in response to the call, MacAndrews and one of the officers entered the bar while the other officer took a position at the other entrance. MacAndrews approached the suspect from behind and asked him to identify himself as he felt the outside of the suspect's jacket for a weapon. The individual identified himself as Leddy, and within seconds MacAndrews discovered a .32–caliber revolver in the bar patron's jacket. At the suppression hearing Detective MacAndrews identified both the weapon seized and Leddy as the individual from whom it was seized. Subsequently at trial Appliance's manager and employee both identified the weapon as the gun used in the December 23 robbery.

Leddy presents a two-issue appeal. He faults the trial justice for his refusal to allow two alibi witnesses to testify about his whereabouts at the time of the Appliance holdup. He is also critical of the trial justice's denial of a motion to suppress any evidence relating to the barroom seizure of the revolver.

■ As noted in *State v. Engram*, 479 A.2d 716, 718 (R.I.1984), Rule 16 of the Superior Court Rules of Criminal Procedure provides for reciprocal discovery. Consequently when Leddy's counsel sought discovery of the state's evidence, the state had a right to request the same from Leddy. Leddy's obligation included notifying the state of both his intention to rely on an alibi defense and the specific details of the alibi, including the names and addresses of the proposed witnesses. Rule 16(c). In responding to the state's request about Leddy's intention of relying on an alibi

**358**

defense, the response specifically indicated that Leddy was not relying on an alibi defense.

The trial justice decided that before he would rule on the state's motion to bar the alibi evidence, he would hear from witnesses who would offer the alibi. The first witness was Leddy's girlfriend. She, Leddy, and Leddy's mother lived together. The girlfriend testified that on the morning of December 23, 1985, the date of the holdup, she and Leddy awoke at approximately 10 a.m., had breakfast, and then traveled to a laundromat, where they stayed for approximately two hours. Once the clotheswashing chores had been completed, Leddy and his girlfriend paid a visit to the home of Leddy's sister. The trio spent the afternoon doing crossword puzzles, watching life as it is portrayed each weekday afternoon on television's various soap operas, and engaging in a bit of cooking and snacking. Leddy's sister testified that her brother and his girlfriend left her house together to go to work at approximately 5:15 p.m.

Leddy and the girlfriend worked for a janitorial service owned by Leddy's father. According to the witness, both she and Leddy were involved in a cleaning-up operation in a building situated on Providence's North Main Street until 10:30 p.m.

In barring the presentation of any alibi evidence, the trial justice made several factual findings. He was of the belief that if Leddy's alibi defense were legitimate, he would have been aware of it from the moment he was charged. Additionally, the trial justice noted that since Leddy's girlfriend and his sister had discussed the charges with Leddy, each of the proposed witnesses was aware of the importance of this alibi testimony to Leddy's defense. Again, the trial justice expressed the opinion that Leddy's choice not to raise the alibi defense at the discovery stage of the criminal proceeding was a "deliberate, knowing, and intentional choice." He described the belated effort as "a deliberate, possibly strategic, disclaimer of alibi."

The trial justice also pointed out that the late disclosure was prejudicial to the state because it was obviously unprepared to re-

but an alibi defense of which it was totally unaware. The trial justice also emphasized that it was impossible at that late stage of the trial for the state to make an appropriate, thorough investigation of the details of the alibi. Passing the case, in the trial justice's opinion, "would be to eviscerate the notice of alibi rule."

■ In determining the appropriateness of a sanction imposed for a violation of Rule 16, we consider " '(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors.' " *State v. Boucher*, 542 A.2d 236, 241 (R.I.1988). It is our belief that the trial justice, in excluding the alibi defense, has touched all the bases. We see no reason to disagree with the trial justice's conclusion that Leddy, in specifically rejecting any reliance on an alibi defense, embarked on a purposeful endeavor that culminated in a last-minute switch in tactics. We would also point out that Leddy's court-appointed trial counsel was not a party to such devious behavior.

Leddy's second claim of error is that his Fourth Amendment rights were violated when he was stopped and frisked on the evening of January 24, 1986. Consequently, Leddy asserts, the trial justice committed error when he denied the motion to suppress the gun that was seized. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that a police officer can subject an individual to a "stop" and "frisk" short of a full search and seizure in certain circumstances, even if probable cause for arrest is absent. The Court held that in order for the "stop" and "frisk" to be proper, the police officer must have a reasonable suspicion grounded upon articulable facts that the person "stopped" is about to, or is engaged in, the commission of a crime. Incident to such a stop the officer is constitutionally permitted to conduct a "frisk" of the subject in order to protect his safety and the safety of those people in the vicinity.

Leddy places great reliance on the case of *United States v. Hensley*, 469 U.S. 221,

105 S.Ct. 675, 83 L.Ed.2d 604 (1985). This case expanded the *Terry* doctrine in two ways. The Supreme Court expanded the "stop" and "frisk" principles set forth in *Terry*, which had concerned itself with an "ongoing" crime, to instances in which the crime had been "completed." In *Hensley*, police in one state, on the basis of their reasonable suspicion, conducted a proper investigatory stop on objective reliance on a wanted flyer issued by police in another state.

 Here we are not confronted with a situation like that found in the *Hensley* case. Detective MacAndrews was in the area of the Manton bar because of a radio communication that originated from his department. Obviously a police officer called upon to aid other law enforcement officials in the search for a criminal suspect is entitled to assume that those requesting such assistance have requisite information that will support an independent assessment of reasonable suspicion. *In re John N.*, 463 A.2d 174, 177 (R.I.1983).

Leddy's appeal is denied and dismissed. The judgment of conviction is affirmed. The case is remanded to the Superior Court.