STATE

v.

Alan AMARAL.

No. 91–374–C.A.

Supreme Court of Rhode Island.

June 24, 1992.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Elizabeth Wallace, Sp. Asst. Atty. Gen., for plaintiff.

Lise J. Gescheidt, Providence, for defendant.

## OPINION

KELLEHER, Justice.

On February 21, 1991, a Newport County jury found the defendant, Alan Amaral (Amaral), guilty of assault on a uniformed police officer, of eluding police, and of resisting arrest. Amaral was sentenced to three years to serve for the assault of the police officer, which was to run consecutively to a one-year sentence for resisting arrest. Amaral was also fined a total of $2,500 and received a three-year loss of his

license to operate a motor vehicle. Amaral is now before this court on appeal whereby he claims that the trial justice erred in excluding certain defense evidence as a result of his finding an intentional violation of Rule 16 of the Superior Court Rules of Criminal Procedure. We sustain Amaral's appeal and remand for a new trial. The relevant facts are as follows.

Officer Charles Mulcahy (Mulcahy) of the Tiverton police department was on routine patrol at 1:10 a.m. on August 28, 1988, when he observed a pickup truck traveling at a high rate of speed on Stafford Road. Mulcahy stated that when he activated the cruiser's siren and began pursuit, the truck's driver increased his vehicle's speed and extinguished its headlights. Shortly thereafter, Mulcahy noticed a brown pickup truck with steam rising from the hood stationed in the parking lot of Guimonds, a local variety store. Mulcahy radioed for assistance.

Mulcahy testified that as he approached the truck, he saw Amaral lying on the floor on the passenger's side. Mulcahy observed a wood baseball bat wedged between the driver's seat and the door in addition to a knife in the open glove compartment. Mulcahy claimed that Amaral refused to show his hands or to leave the truck. At this point one Officer Ruest (Ruest) arrived on the scene. The two officers then forced Amaral out of the vehicle. Mulcahy asserted that Amaral reacted violently to a pat-down search and had to be wrestled to the ground in order to be handcuffed.

Shortly after Amaral was placed in the police cruiser, a female claiming to be Amaral's girlfriend appeared and asked Mulcahy what was happening. Mulcahy testified that at no time did she leave her vehicle, which was located about fifty feet from Amaral's truck. Mulcahy recalled that while Amaral was in the back of the patrol car, he remained in an agitated state, slamming his face against the window and thrashing about in the back of the cruiser throughout the trip to the police station.

Mulcahy recalled that Amaral continued to be obstreperous while being booked at the Tiverton police station. At one point Amaral announced that he was leaving and lunged at Mulcahy, grabbing him by the throat. Mulcahy recalled striking Amaral across the face to break his grip, which he succeeded in doing before Ruest returned Amaral to a seat. Mulcahy then noticed that Amaral was bleeding from his nose and had a swollen cheek. As a result an ambulance was summoned. Ruest remained with Amaral at all times during the one-hour-and-fifteen-minute trip to and from Newport Hospital.

While Amaral was being treated at the hospital, his parents arrived at the police station. Amaral was returned to the station while his parents were still there. At this time Amaral told his father that the police had repeatedly kicked him. Mulcahy related that when he and Ruest attempted to remove Amaral to a cell, Amaral struck Mulcahy across the chest and managed to knock the two officers to the ground, resulting in yet another scuffle before Amaral was subdued. Mulcahy was subsequently treated for contusions of the neck and the right hand, abrasions at the temple and the forehead, and a superficial human bite of the left wrist. The attending physician testified that the bruises Mulcahy sustained were consistent with a person's having been in a fight.

Amaral's mother testified at trial that she saw her son at the police station on the morning he returned from the hospital. She observed that Amaral was bruised and had a swollen eye, a bump on his nose, and a split lip. Amaral's mother recalled that her son said to her, "Look what they did to my face." Amaral's father also testified to similar observations.

Dawn Almeida (Almeida), Amaral's girlfriend at the time of the arrest, testified that she was on her way home from a nightclub when she saw Amaral's truck and the police cars in the parking lot of Guimonds. In contradiction of Mulcahy's testimony that she did not leave her car, Almeida testified that she walked up to the police car where Amaral was being held and saw his face. Almeida said that Amaral told her he had been assaulted by the

police. She claimed that Amaral's face reflected the same injuries that are depicted in a mug shot that was taken by police and introduced as evidence at trial.

In considering Amaral's argument that the trial justice abused his discretion in excluding defense evidence as a discovery sanction, a brief recitation of the procedural history behind the Rule 16 ruling is in order. The public defender interviewed Amaral and entered his appearance as Amaral's attorney on October 27, 1988, and filed a motion for discovery on that date. The state answered discovery on November 16, 1988. The record reveals that the case was ready for trial in June 1990 but was continued several times at Amaral's request.

On November 8, 1990, private counsel entered his appearance on behalf of Amaral. The state and the defense began jury selection on November 13, 1990. On November 14, 1990, before the jury was sworn, defense counsel filed an answer to discovery, including medical records of Amaral's examination at Newport Hospital; photos taken by Amaral's father on August 30, 1988, depicting injury to Amaral's face and upper torso; and a list of defense witnesses, accompanied by a summary of their expected testimony. The state objected and moved for sanctions, and the trial justice reserved decision on the state's motion until the close of the state's case in chief.

The trial justice held the Rule 16 hearing on November 27, 1990, after the close of the state's case. The trial justice heard testimony from Amaral on the issue of deliberate versus inadvertent noncompliance.

Amaral testified that photographs of his injuries were taken shortly after his arrest and were subsequently turned over to the Office of the Public Defender. Amaral testified that he advised his public defender of the identity of his witnesses—including his mother, father, and girlfriend—all of whom had seen Amaral in the custody of the Tiverton police. Amaral also stated that he believed his public defender had copies of his medical records. Amaral tes-

tified that three weeks before trial, he met with his public defender and learned that the photographs and the witness statements were missing from his file. Amaral concluded that his case was not being handled properly and therefore retained private counsel a short time before his trial was scheduled to begin.

Despite Amaral's testimony, the trial justice found that the failure to produce the photographs, the medical records, and summaries of the witnesses' testimony to be a "deliberate, knowing and intelligent choice of defendant's counsel right up until November 14, 1990, and * * * not due to inadvertence, mistake, oversight or otherwise." On the basis of this determination, the trial justice excluded the medical records from the Newport Hospital and the photos taken of Amaral following his arrest that depicted multiple bruises on his upper torso. The trial justice allowed Amaral's parents and girlfriend to testify regarding their observations but precluded them from testifying that Amaral looked as if he had been beaten up.

The state argues that the trial justice did not abuse his discretion in excluding the photos and the medical records. The state maintains that the decision represents a reasonable balance of interests in the circumstances after an objective view of the matters involved. The state contends that assuming arguendo that the trial justice erred in imposing Rule 16 sanctions, any such error was harmless in light of the evidence the trial justice allowed Amaral to introduce.

Amaral argues that the trial justice abused his discretion and committed reversible error in excluding defense evidence as a discovery sanction. Amaral maintains that because this evidence prevented the jury from considering reliable and impartial records of his physical injuries, the jury was deprived of the means to evaluate fairly his claims of self-defense and excessive force on the part of Mulcahy. We agree.

▪ Rule 16 has been described as "one of the most liberal criminal-discovery mechanisms in the United States." *State*

*v. Powers,* 526 A.2d 489, 491 (R.I.1987). The rule mandates pretrial disclosure and is intended to "be broad in scope so that neither the defense nor the prosecution is surprised at trial." *Id.* Timely disclosure of information affords both the state and the defendant adequate time to prepare the case properly. However, this court has also noted that "the sanction of excluding testimony is an extreme and drastic remedy which should be exercised with caution and restraint." *State v. Ramos,* 553 A.2d 1059, 1067 (R.I.1989).

■ This court has stated that in determining the appropriateness of a sanction imposed for a violation of Rule 16, it considers the following factors: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) other relevant factors." *State v. Leddy,* 555 A.2d 356, 358 (R.I.1989) (quoting *State v. Boucher,* 542 A.2d 236, 241 (R.I.1988)). A trial justice's determination regarding a Rule 16 sanction is accorded great deference and will be overturned only upon a showing of clear abuse of discretion. *State v. Ramos,* 553 A.2d at 1068.

■ In the instant controversy the trial justice considered the factors listed above and found that Amaral's failure to produce the photos and hospital records was deliberate and intentional. We find otherwise. Amaral's sworn testimony at the Rule 16 hearing indicates that he had given the photos and the witness statements to his public defender in October 1988. Amaral also testified that the public defender apparently had lost or misplaced this evidence prior to trial and therefore he retained private counsel. For reasons that cannot be discerned from the record, Amaral's public defender was present and available to testify but was not called by either Amaral or the state. Amaral's sworn testimony went uncontradicted and unimpeached. The record is devoid of any evidence that would support the trial justice's factual finding that Amaral's belated answer to the state's request for discovery was an intentional withholding of information motivated by tactical considerations. Therefore, we believe such a finding by the trial justice was clearly erroneous.

■ The trial justice also found that the prejudice to the state resulting from the delayed disclosure was "overwhelming" because "the state was entitled to sufficient time before trial to prepare to present what evidence it may have to account for the injuries and bruises to [Amaral's] torso." Finding that the state did not have a reasonable time to "deal with the factual content of this [medical] record" yet acknowledging that the evidence contained in it "goes to the credibility of the witnesses who have testified," the trial justice precluded introduction of the records in their totality.

We believe that the state could not have been surprised by the proposed evidence and that any prejudice to the state resulting from its admission could have been cured by the granting of a continuance. First, the police knew the extent of Amaral's injuries and the fact of his medical treatment on the night of his arrest. Furthermore the police were knowledgeable of Amaral's physical condition during his hours in custody and were also aware of his contact with civilian witnesses. Clearly there could have been no surprise to the state regarding this evidence. Although the state may have been prejudiced with regard to explaining the injuries to Amaral's upper torso, any such prejudice could have been cured by continuing the trial in order to give the state an opportunity to prepare its case properly in response to Amaral's answers to discovery. Such an approach would have served the dual goal of enabling the state to meet Amaral's proof and effecting Amaral's rights to adequate representation and to present a defense.

■ This court does not subscribe to the argument espoused by the state that even if the trial justice erred in excluding the evidence at issue, such error was harmless. Mulcahy asserted at trial that he only struck Amaral once in the face before his trip to the hospital. Mulcahy claimed that he saw no injuries to Amaral before the

solitary blow was levied. By depriving Amaral of his ability to admit medical and photographic evidence of multiple injuries at the time he went to the hospital, the trial justice deprived Amaral of his ability to impeach the credibility of Mulcahy's testimony. In addition, at trial Mulcahy had no recollection regarding Amaral's sobriety or lack of it. The excluded medical records contained a diagnosis of acute alcohol intoxication. Without the medical records and in light of Mulcahy's lack of recollection regarding Amaral's sobriety, no factual predicate existed for the defense to request intoxication instructions. Such instructions may have established a theory of defense to the offenses Amaral was charged with that required proof beyond a reasonable doubt of specific intent and/or knowledge and willfulness requirements. Finally because the jury was not allowed to see photographs and medical records documenting Amaral's injuries a short time after they were allegedly inflicted, the jury was deprived of the factual predicate by which to weigh and measure Amaral's implicit claim of self-defense and of excessive force utilized by the police during his arrest.

Accordingly we find the trial justice's exclusion of the medical records and the photos as a Rule 16 sanction to be a clear abuse of discretion that caused substantial prejudice to Amaral.

This court notes that Amaral has raised other meritorious issues on appeal. These claims include substantive allegations of prosecutorial misconduct regarding the state's questioning of a defense witness on cross-examination concerning whether she was "on drugs," as well as inappropriate comments made by the state in its closing argument. However, we refrain from any further discussion of these issues because of our belief that any improprieties would be rectified in the event that this case is retried.

For the reasons set forth above, Amaral's appeal is sustained, the judgment of conviction entered by the Superior Court is reversed, and the case is remanded to the Superior Court for a new trial.