STATE

v.

Norman C. PRAY, Sr.

No. 95–634–C.A.

Supreme Court of Rhode Island.

March 11, 1997.

Lauren Sandler Zurier, Asst. Attorney General, Aaron Weisman, Asst. Attorney General, for Plaintiff.

John A. MacFadyen, III, Providence, for Defendant.

## OPINION

FLANDERS, Justice.

A Superior Court jury returned guilty verdicts against the defendant, Norman C. Pray, Sr., on three counts of second-degree child molestation. He presses several points on appeal, but only two are colorable. We asked the parties to show cause why this matter should not be decided on their pre-briefing submissions. Having reviewed their contentions, we see no reason for further briefing or argument and shall therefore decide Pray's appeal at this time.

## I

### The State's Nondisclosure Before Trial of an Additional Location in Defendant's Home Where the Alleged Sexual Assaults Occurred

■ In 1993 Pray's granddaughter, Lisa (a fictitious name), told the police that Pray had been sexually molesting her and forcing her to touch him sexually during her customary visits to his home. The police obtained a signed statement from Lisa containing the following colloquy:

"Q. [Lisa] what room * * * did these incidents take place?

"A. In the basement, its [*sic*] the family room.

" * * *

"Q. [Lisa] is there anything else you would like to add to this statement.

"A. No."

The state seasonably disclosed Lisa's signed statement to the defense. *See* Super. R.Crim. P. 16.[1] On direct examination, however, Lisa said that this activity had also occurred in Pray's bedroom. Pray's counsel immediately moved to pass the case, claiming that the state had failed to indicate in its discovery responses that Lisa would testify about any bedroom incidents. The trial justice excused the jury so that Lisa could be questioned on this issue. At the end of this voir dire, the court found that Lisa had reasonably thought that the police were asking her where most of the sexual touching had occurred. As a result the trial justice concluded that because the state lacked any apparent pretrial knowledge of the alleged bedroom activity, the state had not deliberately withheld this information from the de-

---

1. Rule 16 of the Superior Court Rules of Criminal Procedure provides in pertinent part:

   "(a) * * * Upon written request by a defendant, the attorney for the State shall permit the defendant to inspect or listen to and copy or photograph any of the following items within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State:

   \* \* \* \* \* \*

   (7) *as to those persons whom the State expects to call as witnesses at the trial,* all rele-

vant recorded testimony before a grand jury of such persons and *all written or recorded verbatim statements, signed or unsigned, of such persons* and, if no such testimony or statement of a witness is in the possession of the State, a summary of the testimony such person is expected to give at the trial." (Emphases added.)

fense. Defense counsel protested in vain that this evidence knocked the legs out from under his principal line of defense—that it was improbable that Pray would have engaged in such iniquitous acts in a room as open to view as the basement. Although the trial justice denied Pray's motion to pass, she allowed the defense a half-day continuance to regroup, without drawing any defense objection or request for any further preparation time.

Pray now challenges the trial justice's actions on several related grounds. First, he argues that the state knew about the bedroom incident before trial and purposely omitted it from its Rule 16 discovery responses to sandbag the defense in front of the jury. Because the prosecutor asked Lisa on direct examination whether "those [sexual-touching] incidents only happen[ed] in the basement or did they happen in other places?", Pray insists that the prosecutor must have known about the bedroom activity before trial or he would not have asked such an open-ended question. Although conventional trial wisdom holds that a lawyer should not query a witness unless the examiner knows what the answer will be, this is a rule much honored in the breach, often for countervailing tactical reasons. Given Lisa's explanation of her pretrial statement, the prosecution's denials of any pretrial bedroom-incident knowledge, and the dearth of any evidence suggesting a deliberate nondisclosure, we are unable to conclude that the trial justice erred by failing to infer from this one question that the prosecutor must have known about the bedroom incident and intentionally kept it under his hat until he elicited it from Lisa on direct examination.

Pray also argues that the prosecutor's pretrial failure to ferret out this evidence and/or to verify the completeness of the facts disclosed in the documents that were produced constitutes a lack of "due diligence" under Rule 16 and should therefore be treated as the equivalent of a deliberate nondisclosure. The trial justice disagreed, and so do we. Although the police report and the state-

ments produced by the state to the defense pursuant to its discovery obligations indicated that these sexual contacts with Lisa had occurred in Pray's basement, the state was not required to provide the defense with a detailed narrative containing every evidentiary facet of Lisa's expected testimony. *See State v. Woodson,* 551 A.2d 1187, 1192 (R.I. 1988) (noting that "detailed narration" is not required in a summary of a witness's expected testimony).

Indeed, under Rule 16(a)(7), the state is only obligated to provide a summary of its expected witnesses' testimony when "no such [written or recorded] testimony or statement of a witness is in the possession of the State." Although the state cannot deliberately withhold material evidence from the defense when it knows its disclosed witness statements do not advert to such evidence,[2] that is not the situation here. Given the truth of the disclosed facts contained in Lisa's signed statement, the absence of any suggestion in the other produced documentation that this was the only place where such activity occurred, and the prosecutor's lack of any actual pretrial knowledge of the bedroom incidents, we cannot fault the prosecutor for having failed to interview Lisa before trial about other possible venues in Pray's home for the alleged misconduct—let alone about any possible bedroom incidents. *Compare State v. Concannon,* 457 A.2d 1350, 1353 (R.I.1983) (when a complaining witness's statement failed to indicate that the defendant had committed an alleged additional act of first-degree sexual assault but the police report and the grand-jury testimony provided to the defense contained statements of the complaining witness that negated any such act by the defendant, the prosecution violated Rule 16 by not providing the defense with a pretrial summary of the complainant's expected testimony concerning this alleged additional assault by the defendant) *with State v. LaChapelle,* 638 A.2d 525, 531 (R.I.1994) (failure of state to disclose alleged statement by the defendant to complaining witness held not to violate Rule 16 when sexual-assault incident itself had already been disclosed).

---

**2.** *See, e.g., State v. LaChapelle,* 638 A.2d 525, 530 (R.I.1994) ("[i]n cases in which the state is aware of either relevant oral statements of a defendant or oral testimony or statements of a witness that have not been reduced to writing, we interpret [Rule 16(a)(7)] to require the state to summarize such statements or testimony in its discovery response").

■ Moreover, for legitimate tactical reasons the state's trial counsel may have eschewed interviewing this complaining child witness before trial to preempt any defense insinuation that her testimony had been molded or that she had been coached. Since Pray has not convinced us that the trial justice misconceived material evidence or was otherwise clearly wrong, her due-diligence determination must stand. *See State v. Lanigan*, 528 A.2d 310, 314–15 (R.I.1987).

We also believe that Pray suffered no procedural prejudice from this nondisclosure. *Cf. State v. Squillante*, 622 A.2d 474, 478 (R.I.1993) (the defendant has the burden of showing that an unintentional nondisclosure caused procedural prejudice); *Concannon*, 457 A.2d at 1354 ("[p]rocedural prejudice occurs when defense counsel must proceed to trial unprepared"). In fact, Lisa's mention of the bedroom incident allowed Pray's lawyer to impeach her credibility vigorously on cross-examination by stressing the alleged inconsistencies between her police statement and her in-court testimony. Moreover, because the bedroom, like the basement, was open to view, this evidence was consistent with Pray's defense that such a visually accessible location would be an unlikely venue for sexual misconduct.[3] In sum, we do not believe that Pray's defense was derailed by the bedroom-incident evidence, nor do we believe that the trial justice abused her discretion in denying Pray's motion to pass.

## II

### The State's Use of the Bedroom Incident to Impeach Defendant's Wife on Cross-examination

■ Pray also contends that the trial justice blundered in allowing the state to exploit its nondisclosure of any bedroom incidents by using one of them to cross-examine his wife, Barbara. We review the trial justice's decision here for abuse of discretion. *See State v. Morejon*, 603 A.2d 730, 736 (R.I.1992).

■ On direct examination Barbara said that she had never seen her husband alone with Lisa. But on cross-examination, the state would have none of it:

"Q. Have you ever seen [Lisa] in your bedroom with your husband?

"A. No.

"Q. Did you ever walk into your bedroom one time and see [Lisa] sitting on top of your husband?

"A. Never."

Defense counsel sat by silently while these questions were asked and answered. The prosecutor then asked, "Did you ever yell at [Lisa], 'Get the hell off him. What do you think you're doing,' or something like that?" Barbara responded in the negative. Only at this point did defense counsel finally object and again move to pass the case. Because this bedroom incident had not been disclosed before trial, the defense argued, it could not be used at trial even for impeachment purposes. The trial justice then struck this line of inquiry from the record (the substance of which was helpful to Pray anyway), told the jury to disregard it, and said that this type of other-crimes evidence could be considered only for proof of intent or lewd disposition. However, she denied Pray's motion to pass.

Pray now claims that the prosecution's questions ignited the passions of the jury by raising the specter of incipient intercourse (as opposed to mere sexual touching). In rejecting this theory, we cannot shut our

---

3. The criminal information did not say in which room Pray committed these sexual assaults. But if location was truly critical to his defense, Pray could have filed a bill of particulars to nail down the where and when of the assaults. *Cf. State v. Mollicone*, 654 A.2d 311, 325 (R.I.1995) (emphasizing that a bill of particulars is used to provide defendant with the factual details omitted in the indictment or information " 'in order that judicial surprise is avoided at trial' "); *State v. Brown*, 574 A.2d 745, 748 (R.I.1990) (adding that a bill of particulars restricts the state's proof to the allegations set forth in the bill). Having failed to do so, Pray cannot cry foul because the state did "not document verbatim every sentence recalled by a witness as being uttered" or provide disclosure of "every trifling detail or minutia of oral statements or testimony." *LaChapelle*, 638 A.2d at 531 (concluding that the state did not violate its discovery obligations by failing to disclose every "peripheral detail" of the alleged misconduct).

eyes to the fact that defense counsel failed to object while the jury's passions were supposedly inflamed by these bedroom-incident questions and then belatedly sought a mistrial because of alleged jury contamination. We have already explained why the state was not obliged to disclose the bedroom incident before trial. And in any event, because this was cross-examination, the state can use such undisclosed information to impeach a defense witness even when, unlike the situation here, it should have been disclosed to the defense before trial under Rule 16. *See State v. Tempest*, 651 A.2d 1198, 1208–09 (R.I.1995); *see also State v. Sanders*, 609 A.2d 963, 965 (R.I.1992) (even evidence that was not admissible in the state's case in chief because it was not disclosed beforehand can be used to rebut a defendant's false statements); *State v. Lawrence*, 492 A.2d 147, 149 (R.I.1985) (similar).[4] Therefore, although the trial justice may have erred in preventing the state from using the bedroom incident for impeachment purposes during its cross-examination of Barbara, she certainly did not err in denying Pray's motion to pass after she aborted the state's attempt to do so and instructed the jury to disregard this testimony.

## III

### The Defendant's Other Arguments

■■■ We also deem the remaining issues raised by Pray to be without merit. The trial justice's decision to exclude Barbara's testimony relating to Lisa's mother's accusations of child abuse aimed at Lisa's father was proper because it was hearsay, it involved impeachment on a collateral issue, and its relevance was outweighed by undue prejudice. In any event Lisa's father later testified in regard to the nature of his wife's threats against him during their divorce proceedings. The racing programs that were

offered to corroborate Pray's alibi that he had actually attended races on the dates in question were also properly excluded because of the defense's inability to lay a proper foundation for admitting such evidence as a business record. And finally, we disagree with the contention that Pray was improperly charged with the crimes at issue. As we have previously stated, the state does not have to prove the exact dates upon which a sexual assault occurs, and an information alleging that the acts occurred within a certain time frame is quite permissible. *State v. Brown*, 619 A.2d 828, 832 (R.I.1993); *State v. McKenna*, 512 A.2d 113, 114–15 (R.I.1986).

### Conclusion

For these reasons we deny and dismiss Pray's appeal, affirm the judgment of conviction, and remand the papers in the case to the Superior Court.

---

4. Moreover, on cross-examination of defense witnesses

"courts have frequently approved reference to matters that would not be admissible as part of the prosecution's case in chief. Even illegally obtained evidence may be admitted for impeachment purposes when a defendant gives testimony that may be construed as absolving himself from fault in a criminal case." *State v. Dowell*, 512 A.2d 121, 124 (R.I.1986).