**STATE**

v.

**Sandra A. OLIVEIRA.**

**No. 97–236–C.A.**

Supreme Court of Rhode Island.

May 28, 1999.

Jane M. McSoley, Aaron L. Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

Sandra A. Oliveira appeals from the entry of a final judgment of conviction following her trial before a Superior Court jury on each of four counts contained in a criminal information charging her with "uttering and publishing as true, a false, forged, altered and counterfeited negotiable instrument" in violation of G.L.1956 § 11–17–1. For the reasons hereinafter set out, we sustain her appeal and remand the case for a new trial.

## Case Facts/Travel

In December 1994, Sandra A. Oliveira (Sandra) was hired as a bookkeeper by F & A Awning Co., Inc. (F & A), a corporation owned and managed by Randolph Pomfret (Pomfret), in the Town of Lincoln. Her employment duties included maintaining the corporation's financial records and preparing checks to pay corporate obligations. The checks, after being prepared by Sandra, were placed on Pomfret's desk for him to sign.

In late June 1995, Sandra, in part because of her pregnancy, voluntarily terminated her employment with F & A. Shortly after she left that employment, Pomfret discovered what appeared to be irregularities in the corporate checking account. He contacted Sandra and questioned her concerning several corporate checks that had been made payable to Sandra and cashed. She professed to have no knowledge about the checks. Pomfret then contacted the Lincoln police department. After investigation, it was determined that in late May, 1995, Sandra appeared to have made out two F & A corporate checks totaling $800 payable to herself which she then cashed at a bank in the City of Warwick where she resided. In June of 1995, Sandra appeared again to have made out two additional F & A corporate checks payable to herself and which were also cashed by her at the same bank in Warwick. The total amount of the second two checks was $1,000.

Because the four checks had been negotiated at a bank in the City of Warwick, the Lincoln Police referred the investigation to the Warwick police department. The Lincoln police also forwarded to the Warwick police a series of bank surveillance photographs taken of Sandra at the Warwick bank on the days that each of the checks were cashed.

Warwick Detective Ann Ferla (Detective Ferla) attempted to contact Sandra at her residence in Warwick to question Sandra about the four checks, but was unable to do so. Detective Ferla left word with a person at Sandra's home for Sandra to contact her at the Warwick police station. The following morning Sandra went to the Warwick police station to meet with Detective Ferla. At the station, Sandra was first advised of her Miranda constitutional rights. She then signed a waiver of those rights and next proceeded to write out a statement in which she admitted to making out the four checks in question, signing Pomfret's name to each, and cashing each check at the bank in Warwick. Sandra, while at the Warwick police station, was also shown the series of photographs taken of her while cashing the checks in question. Sandra gave as her reason for what she had done the fact that she needed the money to pay her household expenses.

The Warwick police department then prepared the usual criminal information charging packet for referral to the Attorney General. A criminal information, K2/95–786A was subsequently filed in the Kent County Superior Court on October 17, 1995 charging Sandra with four separate counts of uttering and publishing as true, "a false, forged, altered and counterfeited negotiable instrument * * * with intent to defraud Rhode Island Hospital Trust Bank and Randolph Pomfret, doing business as F & A Awning Co., Inc. in violation of § 11–17–1 of the General Laws." Sandra was arraigned, pled not guilty, was released on bail and later went to trial before a jury in the Kent County Superior Court on December 10, 1996. On December 12, 1996, the trial jury returned verdicts of guilty on all of the four criminal information counts. Sandra's motion for a new trial was later denied by the trial justice and this appeal followed.

Additional facts will be supplied as needed.

## Analysis

The defendant asserts here on appeal that the trial justice erred in giving his supplemental instruction to the jury as a result of his misconstruing the charges

made in the state's criminal information as well as the forgery statute; failing to give an explicit cautionary instruction following a question posed to the defendant concerning her post-arrest silence; failing to instruct the jury that mere possession of a forged instrument did not impute to the defendant knowledge of the actual forgery; denying the defendant's motion for a mistrial after the state prosecutor cross-examined her on the issue of her post-arrest silence; and, limiting the defendant's testimony as well as her attorney's cross-examination of Pomfret.

We believe it is only necessary for us to review and consider Sandra's challenge to the trial justice's ruling on the motion in limine and the supplemental jury instruction for purposes of this appeal and will allude inferentially to other issues raised by her in the course thereof.

### The Motion In Limine

Prior to commencement of Sandra's jury trial, the state's prosecutor moved in-limine requesting the trial justice to prohibit defense counsel during cross-examination from inquiring of the state's complaining witness, Randolph Pomfret, about the then ongoing investigation of Pomfret by both state and federal taxing authorities for alleged tax liabilities. Those alleged liabilities, the defense suggested, resulted from Pomfret's alleged practice of having paid his company employees "under the table" in cash to avoid payment of required taxes. The alleged tax avoidance practice engaged in by Pomfret spanned the time of Sandra's employment as well as the time frame during which the checks in question were cashed by Sandra.

Defense counsel objected to the state's motion in limine and explained in support of his objection that Sandra intended to testify in her defense at trial and would testify that while she did write out, endorse, and cash the checks, she did not forge Pomfret's signature to the checks.

He also informed the trial justice that Sandra would testify that after cashing the four checks that were signed either by Pomfret or by his sister or another employee, all of whom had signed company checks in the past, that she cashed the checks at Pomfret's request and gave the cash proceeds to Pomfret who then used the cash to pay his company employees "under the table" and thus avoid his state and federal tax obligations. The state's prosecutor in response informed the trial justice that Pomfret, if so questioned by defense counsel concerning alleged "under the table" cash payments to his employees to avoid tax obligations, "might at some point invoke his Fifth Amendment rights, thereby prejudicing the jury * * *."

Defense counsel argued to the trial justice, without success, that precluding his cross-examination of Pomfret on that matter would seriously impair his ability to effectively represent his client and would prohibit him from exposing what he believed to be the real motive on Pomfret's part for accusing Sandra of cashing the checks and taking the check proceeds for her own personal use. That motive, defense counsel contended, was Pomfret's ploy to insulate himself from potential tax liability during the ongoing investigation of his alleged "under the table" cash wage payments to certain of his employees.

In ruling on the state's motion in limine the trial justice informed defense counsel that he would permit, but limit, defense counsel's cross-examination of Pomfret to questioning Pomfret "as to whether or not he wrote the checks in Miss Olivera's [sic] name, signed the checks in Miss Olivera's [sic] name, and he can answer the questions based upon the question." The trial justice then noted that even if defense counsel's proposed cross-examination of Pomfret would be relevant "for the purposes of motive, I think that the prejudicial import outweighs the probative value * * *."[1]

---

1. Rule 403 of the Rhode Island Rule of Evidence provides:

■ We conclude on the basis of the particular facts in this case, that where the trial jury could reasonably be expected to base its verdict on whether it believed Pomfret's version of what had transpired, or Sandra's version of those events, any evidence of motive, bias or prejudice on the part of either Sandra or Pomfret was essential for the jury to know about, and to consider. That being so, cross-examination by the prosecutor and defense counsel would certainly be the principal means by which the credibility of the two witnesses and the truthfulness of their testimony could be tested. *See Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974).

■ While the state in prosecuting a criminal case need not prove motive on the part of a defendant (*State v. Mendoza*, 709 A.2d 1030, 1037 (R.I.1998); *State v. Caruolo*, 524 A.2d 575, 584 (R.I.1987)), any probable motive on the part of the state's complaining witness is always fair game in cross-examination by defense counsel. *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 354; *State v. Texter*, 594 A.2d 376, 377 (R.I.1991). That, of course, is not to say that the scope of cross-examination for purposes of discovering and developing a witness's bias or motive is unlimited (*State v. Doctor*, 690 A.2d 321, 326–29 (R.I. 1997)), nor that a witness may be impeached on collateral matters by the introduction of extrinsic evidence. *State v. Tutt*, 622 A.2d 459, 462–63 (R.I.1993). A trial justice may certainly preclude by pre-trial ruling pursuant to a motion in limine, or later during trial, that counsel's proposed line of questioning if it is not relevant to the trial issue, or if the proposed questioning, even if relevant, is outweighed by any of the reasons prescribed in Rule 403 of the Rhode Island Rules of Evidence. However, that discretionary authority "comes into play only after sufficient cross-examination to satisfy the Sixth Amendment has been permitted as a matter of right." *State v. Sifuentes*, 649 A.2d 500, 502 (R.I.1994). We adhere to long settled doctrine in this jurisdiction that a trial justice is given wide discretion to permit or limit counsel's cross-examination of witnesses during trial, and that discretion, absent a showing of clear abuse, will not be disturbed on appeal, and then, only if such abuse constitutes prejudicial error. *State v. Anthony*, 422 A.2d 921, 924 (R.I. 1980); *State v. Carraturo*, 112 R.I. 179, 189, 308 A.2d 828, 833 (1973).

We believe, because of the particular facts in this case, that the trial justice abused his discretion by failing to afford defense counsel that "reasonable opportunity to explore and to establish any possible bias * * * or ulterior motive" that Pomfret may have possessed and which might have affected his testimony before the jury. *State v. Veluzat*, 578 A.2d 93, 94–95 (R.I.1990). Defense counsel's opportunity to discover and expose any probable motive on the part of the prosecution's complaining witness should not have been summarily foreclosed without first affording defense counsel a minimum threshold of inquiry as to the witness's probable motive for his testimony. The defendant, we conclude, was prejudiced by the trial justice's ruling on the state's motion in limine.

### The Jury Instructions

■ The defendant next asserts that the trial justice misconstrued the charges contained in the state's criminal information as well as the forgery statute when he instructed the jury that it could return a verdict of guilty if it found that Sandra had *either* forged *or* uttered and published the four checks. The defendant correctly notes that Sandra had never been charged with forging the checks but was charged

---

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

only with the offense of uttering and publishing those checks.

In response, the state asserts that our forgery statute, § 11–17–1, creates but one offense which may be committed in various ways, and because Sandra's confession to the Warwick Police had been attached to the criminal information that it was "clear that she was the individual alleged to have forged [the employer's] signature on the checks."[2] Finally, the state contends that even if the trial justice did commit error, Sandra waived the forgery charge issue when she failed to make timely objection to the trial justice's original jury instruction. We find the state's assertions to be without merit.

The record indicates that the jury, during its deliberation, had been troubled by the trial evidence with regard to the specific charges in the criminal information. That concern is evidenced by the fact of its written request to the trial justice for clarification of the jury instruction. In that request, the jury inquired "[i]s the defendant charged with, one, forging the checks, or two fraudulent passing the checks, or a combination of both?" In response, the trial justice informed the jury that the statute "contemplates either one or both of those acts, if you find them to have been proven, establishes the crime * * * the essential elements of the crime are either that Miss Olivera [sic] falsely made, or forged the check with the intent to defraud, or that she uttered and published the false, forged check with the intent to defraud." Defense counsel immediately objected and pointed out that Sandra had been charged only with uttering and publishing. The defendant's objection was

noted for the record. Acting upon the trial justice's supplemental instruction, the jury returned verdicts of guilty within less than fifteen minutes.

■ Defense counsel's objection to the trial justice's supplemental instruction, we believe, should have been sufficient to have alerted the trial justice to his obvious jury instruction error, and permitted him to immediately cure that error by reinstructing the jury that was still present in the courtroom, to the fact that Sandra had only been charged with uttering and publishing—or cashing the checks.[3] Contrary to the state's position here on appeal, we are satisfied that the instruction was erroneous.

Section 11–17–1 provides in pertinent part:

"Every person who shall falsely make, alter, forge * * * or procure to be falsely made, altered, forged * * * any * * * order * * * for * * * the payment of money * * * with intent to defraud, or who shall utter and publish as true or shall procure to be uttered and published as true any such false, forged, altered * * * above-mentioned writing, knowing the same to be false, forged, altered, or * * * with intent to defraud, shall be punished by imprisonment for not more than ten (10) years, or by a fine of not more than one thousand dollars ($1,000), or by both."

The crime of forgery, at common law as well as under § 11–17–1, is committed and complete upon the fraudulent making of a false writing, the particular nature of which is set out in § 11–17–1.[4] The crime

2. Interestingly, the case record discloses that an expert in handwriting analysis retained by the state could not conclusively determine that Sandra had forged Pomfret's signature to the checks at issue.

3. The state's contention that defense counsel waived his objection to the trial justice's supplemental instruction by failing to object when the same instruction was given during the original charge is without merit. "If the light comes on," during a supplemental jury

instruction, and while the jury is still in the courtroom and before it retires to consider its verdict, counsel's objection is timely. *See, e.g., State v. Grabowski*, 672 A.2d 879, 882 (R.I.1996).

4. At common law the crime of forgery and counterfeiting originally punished only those who forged or counterfeited the royal seal, or the royal coin. 2 F. Pollock and F. Maitland, *History of English Law*, 504, 540 (2nd ed.1905).

of uttering and publishing, at common law as well as under § 11–17–1, can be committed only by the offering of a known false writing such as designated in § 11–17–1 with an intent to defraud. *See, e.g.,* Rollin M. Perkins, *Criminal Law* § 8 at 354 (2d ed.1969). The forger need not be the utterer and the utterer need not be the forger nor are either even required to be aware of the other. If a person forges a check, but never attempts to pass or cash it, he is guilty of forgery but not of uttering and publishing. 4 *Wharton's Criminal Law* 71, 99 (Charles E. Torcia, 15th ed.1996). The two common law crimes continue in § 11–17–1 to remain separate offenses. *See* 37 C.J.S. *Forgery* § 1 (1977); Rollin M. Perkins, *Criminal Law* at 355. *See also State v. White,* 563 N.W.2d 615, 617 (Iowa 1997); *Fitzherbert v. State,* 229 A.2d 697, 700 (Me.1967); *State v. Talbot,* 160 Me. 103, 198 A.2d 163, 168 (1964). *Cf. State v. Markarian,* 551 A.2d 1178, 1180 (R.I.1988) (appearing to confuse the two offenses).

We believe that our holding in *In re Fiske,* 117 R.I. 454, 367 A.2d 1069 (1977) which we cited with approval in *State v. Mollicone,* 654 A.2d 311, 319 (R.I.1995), is dispositive of the jury instruction issue now before us. In *Fiske,* the state, in a petition seeking to have a minor declared delinquent, alleged that Fiske had committed *one* of a number of proscribed acts that were set out in the disjunctive in a manner similar to the statute in question here. Fiske was found to have committed one of the acts proscribed by the statute but not the one that he had been charged with having committed. On appeal, we reversed and held that it was "axiomatic that a person charge[d] with a particular offense [could] not be convicted of another and distinct offense even though the other is closely related or of the same general character." *Fiske,* 117 R.I. at 456, 367 A.2d at 1071–72. We noted in *Fiske :*

> "It is true that under this kind of statute proof of any one of the pro-

scribed acts will sustain a conviction, provided the charge is framed in the conjunctive. *State v. Jamgochian,* 109 R.I. 17, 21, 279 A.2d 923, 925–26 (1971). When only one of the offenses set forth in the statute is charged, however, proof of one of the others will not suffice.

\* \* \*

> "In sum, the principle that a defendant, be he juvenile or adult, cannot be found to have committed an offense not set forth in the charge against him is simply an adjunct to or corollary of the constitutional right to specific notice. *See State v. Cody,* 180 S.C. 417, 423–24, 186 S.E. 165, 167 (1936).

> "In this case, Fiske was charged with a violation of § 11–35–17. That enactment is in the disjunctive. It criminalizes telephoning another for the purpose of either (1) harassing, annoying, or molesting or (2) using threatening, vulgar, indecent, obscene or immoral language. Those are separate and distinct cognate offenses. In accordance with the legal principles already referred to, Fiske was entitled to be informed which of those two offenses he was being charged with, to be tried accordingly, and not to be found guilty of an offense differing from the one charged. \* \* \* To convict him in that manner deprived him of rights that were his due under *In re Gault, supra,* [387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)] and constituted a 'sheer denial of due process.' *De Jonge v. Oregon,* 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278, 282 (1937)." *Fiske,* 117 R.I. at 457–58, 367 A.2d at 1072.

On the facts and record before us, Sandra was charged in the state's criminal information with only the crime of uttering and publishing the four checks in question. She had *not* been charged with the forging of those checks.[5] The trial justice's sup-

5. It should be noted that the trial record    actually reports the jury's verdict of guilty for

plemental instruction to the trial jury in which he instructed the jury that Sandra could be found guilty of forgery constituted both clear and prejudicial error.

For the reasons herein above set out, the defendant's appeal is sustained. The judgment of conviction is vacated and the papers in this case are remanded to the Superior Court for a new trial.[6]

only the *uncharged* crimes of *"forge and counterfeit"* and reports no jury verdict on the *charged* crimes of *uttering and publishing*. The words forged and counterfeited in a statute similar to G.L.1956 § 11–17–1 have been held to be synonymous. *Smith v. State*, 7 Md.App. 457, 256 A.2d 357, 360 (1969).

6. In remanding this case for a new trial, we deem it advisable to note that the cautionary jury instruction given by the trial justice, following the prosecutor's questioning of Sandra concerning her post-arrest silence regarding her alleged false report concerning the check passing incidents to the Warwick police, was wholly inadequate. It failed to comply with what we directed be given in such situations. *See State v. Taylor*, 425 A.2d 1231, 1235 (R.I. 1981).