STATE

v.

Michael GEHRKE.

No. 2001–386–C.A.

Supreme Court of Rhode Island.

Nov. 18, 2003.

Virginia McGinn, Esq., Providence, for Plaintiff.

Paula Lynch, Esq., for Defendant.

Before WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## OPINION

PER CURIAM.

The defendant, Michael Gehrke (defendant), appeals from a judgment of conviction of one count of breaking and entering into the home of his former girlfriend, Lauren DeStefano (Lauren), and her mother, Doreen DeStefano (Doreen), in violation of G.L.1956 § 11–8–2. This case came before the Supreme Court for oral argument on October 7, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time.

The defendant asserts that his conviction violated his Sixth Amendment right to present witnesses on his behalf because the trial justice precluded the testimony of one of his proposed witnesses. Because preclusion of defendant's witness was an appropriate sanction for his intentional discovery violation, we affirm the conviction.

## I

### Facts and Travel

The defendant and Lauren had been involved in a turbulent relationship that ended in the spring of 1999. On May 11, 1999, Lauren was scheduled to testify against defendant in Fall River, Massachusetts, about a previous assault he had committed against her. That morning, while alone in her house taking a shower in the second-floor bathroom, Lauren heard someone banging on the bathroom door. She then saw the shadow of a person in the doorway who was crying and talking. At that point, Lauren realized that her former boyfriend, defendant, had joined her in the bathroom.

Lauren said that defendant was pleading with her not to testify against him in court that day. While defendant continued to talk about the upcoming hearing, Lauren asked defendant how he had entered the house and repeatedly asked him to leave. Finally, after her fifth request, defendant did leave. When Lauren was confident that defendant no longer was in the house, she got out of the shower and inspected the front door, which she found unlocked.

Later that day, Lauren and Doreen discovered that someone had tampered with the front door to their house, so Doreen then called the Tiverton Police Department. Tiverton Police Officer Timothy Panell (Officer Panell) responded to the scene. He photographed a crack in the door jamb near the dead bolt and putty on the floor.

The state charged defendant with breaking and entering. During the discovery process, the state notified defendant of its proposed witnesses in accordance with Rule 16 of the Superior Court Rules of Criminal Procedure.[1] The state disclosed

---

1. Rule 16(a)(7) of the Superior Court Rules of Criminal Procedure provides in pertinent part

that: "Upon written request by a defendant, the attorney for the State shall [disclose]

its intention to call Lauren, Doreen and Officer Panell to testify against defendant. On January 12, 2000, the day before the trial was scheduled to begin, defendant provided discovery and reported that he did not intend to call any witnesses.

Also on January 12, defendant had occasion to speak with a friend. The friend told defendant that he had overheard a portion of a conversation between Lauren and Stephanie Costa (Costa) in which Lauren made statements that would weaken her credibility. The thrust of Lauren's alleged statements was that she was angry with defendant about his involvement with other women and that she wanted to see him in jail.

A jury-waived trial began on January 13, 2000, and Lauren and Doreen testified. The defendant did not disclose to the state his conversation with his friend the day before. On cross-examination of Lauren, however, defense counsel asked whether she ever had said "if you couldn't have him [then] no other girl would have him?" The state's objection was sustained and defense counsel proceeded to another line of questioning.

Also on January 13, Costa went to the courthouse and spoke to defense counsel.[2] She apparently confirmed what defendant's friend had said to defendant the day before. According to defense counsel, Costa heard Lauren say that "she would do whatever it took to make sure that [defendant] * * * never dated another girl again and that she would see the asshole in jail."

The trial resumed at approximately ten o'clock the next morning. At that time,

defendant attempted to supplement his discovery response to identify Costa as a defense witness. The state objected, arguing that because defendant had not timely disclosed Costa as a potential witness, he could not call her as a witness as a sanction for his discovery violation. The state further argued that Costa's testimony should be excluded as improper impeachment evidence. Defense counsel responded that he was unable to disclose Costa as a witness earlier because he had not personally spoken to her about what she allegedly overheard until January 13, the previous day. The trial justice reserved ruling on the issue and, after Officer Panell testified, the state rested.

Before defendant presented his case, the state indicated that it was unable to speak with Lauren about Costa's allegation. The defendant immediately took the stand and testified on his own behalf. He alleged that Lauren had invited him to the house on the morning in question and that he had let himself in with a key she had given him. After defendant testified, defense counsel attempted to call Costa. The state renewed its objection to Costa's testimony. In ruling on the state's objection, the trial justice found: "It is clear that at least as of yesterday, the defendant was aware of the existence of [Costa] but chose, for whatever reason, not to make the prosecutor aware that this woman was in fact a potential witness." Accordingly, the trial justice precluded Costa from testifying as a sanction for defendant's violation of Rule 16. The defendant then rested.

The trial justice found defendant guilty of one count of breaking and entering and sentenced him to five years in prison—

---

* * * a written list of the names and addresses of all persons whom the attorney for the State expects to call as witnesses at the trial in support of the State's direct case."

2. The record does not clearly indicate when the conversation took place. At oral argument, however, defendant's appellate counsel said that the conversation took place after court had recessed on January 13.

eighteen months to serve, with the rest of the sentence suspended.

## II

### Sixth Amendment

█ The only issue on appeal is whether the trial justice deprived defendant of his Sixth Amendment right to present a witness on his behalf when she refused his mid-trial request to present Costa as a witness. This Court reviews *de novo* an allegation that a constitutional right has been infringed.[3] *State v. Keohane*, 814 A.2d 327, 329 (R.I.2003). Because the exclusion of defendant's witness was an appropriate sanction for his deliberate discovery violation, we perceive no constitutional violation.

█ The Sixth Amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor." The right of compulsory process includes "the right to have the witness' testimony heard by the trier of fact." *Taylor v. Illinois*, 484 U.S. 400, 409, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). However, a defendant's right to present witnesses on his or her behalf is not absolute. "The Compulsory Process Clause provides [defendant] with an effective weapon, but it is a weapon that cannot be used irresponsibly." *Id.* at 410, 108 S.Ct. 646. Unlike most other Sixth Amendment rights, which arise automatically with the initiation of the adversary process, "[t]he decision whether to employ [the right of compulsory process] in a particular case rests solely with the defendant. The very nature of the right requires that its effective use be preceded by deliberate planning and affirmative conduct." *Id.* The right of compulsory process does not excuse a criminal defendant from complying with applicable discovery rules. *Id.* at 414–15, 108 S.Ct. 646. Pursuant to Rule 16, defendant, like the state, was bound to identify his potential witnesses prior to trial. *See State v. Nardolillo*, 698 A.2d 195, 201–02 (R.I. 1997).

The United States Supreme Court has approved the preclusion of probative evidence when a defendant has failed to comply with a valid discovery rule. For example, the defendant in *Taylor*, on the second day of trial, attempted to supplement his response to the state's discovery request by adding the names of two witnesses whom he wished to call. *Taylor*, 484 U.S. at 403, 108 S.Ct. 646. Upon inquiry, however, it was revealed that defense counsel had contacted the proposed witnesses "on the Wednesday of the week before the trial began." *Id.* at 405, 108 S.Ct. 646.[4] As a sanction for the discovery violation, the trial court refused to allow the witnesses to testify at trial, and the defendant ultimately was convicted of attempted murder. *Id.* Rejecting the defendant's Sixth Amendment claim, the Supreme Court held that preclusion of the defendant's witnesses' testimony was appropriate because the decision to withhold the proffered witnesses' identity was a calculated attempt to secure a tactical advantage at trial. *Id.* at 414–15, 108 S.Ct. 646.

█ We are satisfied that the facts of this case are similar to those before the

---

**3.** The issue in this case is not whether the trial justice selected the correct sanction pursuant to Rule 16(i), which this Court would review for abuse of discretion. *E.g., State v. Amaral*, 611 A.2d 380, 383 (R.I.1992). Rather, the only question is whether the Sixth Amendment absolutely prohibited the trial justice from considering preclusion as a possible sanction in this case.

**4.** It is not clear what day of the week Taylor's trial actually began.

Supreme Court in *Taylor.* The defendant's failure to notify the state properly of his intent to call Costa to testify was a sufficiently egregious violation of the discovery rules to warrant preclusion of her testimony. Although defendant's delay in this case was shorter than the delay in *Taylor,* it is apparent that defendant's actions here were similarly intended to secure a tactical advantage at trial. Despite the fact that defendant learned of the general subject of Costa's proposed testimony the day before trial, and defense counsel personally met with Costa at some point on the first day of trial, defendant failed to disclose any of that information in a timely manner. Rather, as the trial justice found, "defendant * * * chose, for whatever reason, not to make the prosecutor aware that this woman was in fact a potential witness" until Lauren completed her testimony and was excused. Knowing the subject of Costa's proposed testimony, defendant attempted to impeach Lauren with that information on cross-examination during the first day of trial. This attempt at cross-examination flies in the face of defense counsel's statement that it was not until the second day of trial that he determined Costa's testimony was "the type of evidence that [the] court would like to hear." It is clear that defendant's delay in disclosing Costa's identity constituted a deliberate attempt to gain a tactical advantage at trial. Because of defendant's delay, the state was unable to discuss Costa's allegations with Lauren before defendant attempted to call Costa, thereby putting the state at an unfair disadvantage. The right of compulsory process does not include the right to deprive the state of its entitlement to a fair trial. *See State v. Hightower,* 661 A.2d 948, 953 (R.I.1995) (noting that "not only is the defendant entitled to a fair trial but so also are the people of the State of Rhode Island entitled to a fair trial").

Furthermore, any delay in discovering the subject of Costa's testimony must be attributed to defendant. In preparing for trial, defendant was obligated to exercise due diligence to discover potential witnesses. *See State v. Binns,* 732 A.2d 114, 118 (R.I.1999). As defendant candidly admits, he first learned of Costa through a personal friend. There is no reason to believe that defendant was unable to speak with his friends before trial to determine whether they knew anything that could help his defense. Accordingly, when defendant eventually did speak to his friend and learned about Costa, he should have been especially vigilant in bringing her identity to the attention of the state and the court.

Moreover, defendant was convicted after a jury-waived trial. The trial justice, as the finder of fact, heard defense counsel's proffer of Costa's testimony and knew the effect it could have on the state's case. Based on evidence already before the court, Costa's testimony merely would have been cumulative evidence of Lauren's bias against defendant. Lauren stated that she had appeared before a Massachusetts court to testify against defendant as a complaining witness and had requested and obtained protective and no-contact orders against defendant on multiple occasions. The defendant admitted that he repeatedly had physically assaulted Lauren throughout their relationship. Thus, the evidence before the court was replete with indication of Laura's antipathy against defendant. *See Bleau v. Wall,* 808 A.2d 637, 644 (R.I.2002).

■ Even if the trial justice had not excluded Costa's testimony as a sanction for a discovery violation, it would have been excluded as improper impeachment evidence. In *State v. Oliveira,* 730 A.2d 20, 22 (R.I.1999), Sandra Oliviera (Oliviera) was convicted of forging a negotiated in-

strument by signing her former boss's signature to company checks, which she later cashed. According to Oliviera, her boss falsely accused her of forging the checks in an attempt to shield himself from an active tax investigation. *Id.* at 23. This Court vacated Oliveira's conviction and ordered a new trial because of the trial justice's refusal to allow her to explore the complainant's alleged motive through cross-examination. In doing so, we noted that: "any probable motive on the part of the state's complaining witness is always fair game in cross-examination by defense counsel." *Id.* at 24. Such motive, however, is a collateral matter that must be developed through proper cross-examination, not through the introduction of extrinsic evidence. *See id.* In this case, because Costa's proposed testimony would be extrinsic evidence of Lauren's motive in testifying against defendant, it would be improper impeachment and, therefore, excluded.

### Conclusion

For the foregoing reasons, the judgment of conviction is affirmed. The papers of the case shall be remanded to the Superior Court.