**In re MIGUEL A.**

No. 2009–63–Appeal.

Supreme Court of Rhode Island.

March 25, 2010.

Aaron L. Weisman, Department of Attorney General, for Petitioner.

George J. West, Esq., Providence, for Respondent.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on March 3, 2010, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The respondent, Miguel A. (Miguel or respondent), appeals from an adjudication of delinquency entered in the Family Court. The respondent makes numerous contentions on appeal. He argues: (1) that the trial justice erred by precluding two witnesses from testifying; (2) that the trial justice erred by denying his motions for judgment of acquittal; and (3) that his due process right to present a defense was violated because of the vagueness of the state's accusations against him. After reviewing the memoranda submitted by the parties and hearing counsel's arguments, we are satisfied that cause has not been shown, and thus the appeal may be decided at this time. For the reasons set forth below, we deny and dismiss the appeal, and affirm the adjudication of delinquency.

## Facts and Travel

In January 2008, the Providence Police Department filed a delinquency petition with the Family Court, alleging that when Miguel was sixteen years old, he committed three offenses which, if committed by an adult, would constitute first-degree child molestation sexual assault, in violation of G.L.1956 § 11–37–8.1.[1]

During the delinquency hearing, the state called two witnesses. The first witness was the eight-year-old victim, Pablo,[2] who testified that Miguel, whom he had known for many years, was the younger brother of Pablo's mother's ex-boyfriend, Christian. Pablo recalled that during the summer of 2007, when he was only seven years old, he and Miguel accompanied his mother and Christian to a supermarket. Miguel and Pablo stayed in the car while Pablo's mother and Christian went shopping. Pablo said that while they were in the car, Miguel forced him to perform fellatio and then told him not to tell anyone. He testified that during that summer, the same thing happened three additional times, including at Pablo's home and at Miguel's home. Pablo remembered details about some of these incidents, including what type of clothing Miguel was wearing; he also described Miguel's penis. The child testified that he was afraid to tell anyone because Miguel had told him "that something bad was going to happen * * * if I told someone." Finally, Pablo testified that he ultimately told his great-grandmother, Caroline (Caroline), about the molestation, because he was "tired of hiding it."

Caroline also testified; she described the afternoon when Pablo disclosed what Miguel did to him. She testified that she was on the telephone when Pablo came into her bedroom and told her what happened:

"[H]e said to me, 'I'm not gay, I'm not gay.' I said to him, what are you have [sic] talking about. He said [Miguel] is

---

1. General Laws 1956 § 11–37–8.1 provides that, "[a] person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under."

2. We shall use a pseudonym throughout this opinion to protect the victim's privacy.

trying to make me gay. I said who is that. He said, Christian's brother.* * * He told me that they were at—his mother was taking him to the market and left him in the car with the boy.* * * He said when in the car, * * * they were in the back seat and [Miguel] made him [perform fellatio]."

Caroline stated that she called the Department of Children, Youth and Families, to report the incident. She also testified that on a separate occasion, Pablo told her about other incidents of abuse by Miguel.

After the state rested, Miguel moved for a judgment of acquittal, arguing that the charges were "lacking in specificity, and [are] very difficult to defend for that reason." He also argued that Pablo's testimony was vague and inconsistent with Caroline's testimony. The trial justice denied the motion, stating:

"[T]he [c]ourt felt strongly in listening to the victim's testimony that it was consistent; it was as clear and concise as it could be for an eight year old boy recounting events that occurred about one year ago when he was seven years old. The [c]ourt felt very strongly this boy offered as much detail as was available to his young mind.* * * In addition, the [c]ourt believes that the great-grandmother's testimony was likewise consistent with the victim's testimony[.]"

The defense proceeded with its case and attempted to call respondent's mother to the witness stand, but the state objected because the witness had not been listed in the discovery response filed in accordance with Rule 10 of the Family Court Rules of Juvenile Proceedings.[3] Defense counsel proffered that Miguel's mother would testify about the background history between Miguel's family and Pablo's family, and he argued that if the witness testified, there would be no prejudice to the state's case. Defense counsel admitted that, although he had spoken to the prosecutor previously assigned to the case and had discussed the possibility of calling Miguel's mother, he had not provided written notice to the state, based on Rule 10(a). The trial justice noted that there had been a number of continuances in this case and concluded that the state would be prejudiced by having the witness testify without an opportunity to prepare for cross-examination.

Miguel also testified; he explained, by way of background, where he went to school, and where he worked. He testified that he knew Pablo because Pablo's mother and Christian had dated for a number of years, but he added that he rarely saw Pablo and was never alone with him. He testified that he had never been to the supermarket parking lot, and he denied that he forced Pablo to perform fellatio.

Defense counsel next attempted to call Miguel's psychiatrist, Dr. James Greer (Dr. Greer), as an expert witness. Because Dr. Greer was unavailable, counsel sought a continuance. Defense counsel proffered that Dr. Greer would testify that Miguel was being treated for stress and depression and that there had "never been any evidence [Miguel] either suffered any sexual or physical abuse or any form of abuse, or a history which suggested he has a history of inappropriate sexual behav-

---

**3.** Rule 10(a) of the Family Court Rules of Juvenile Proceedings provides in pertinent part:

"Upon written request, the attorney for the State shall deliver promptly to the child or the child's attorney a list of witnesses intended to be called by the State and a summary of the testimony each is expected to give. Upon compliance with such request, the attorney for the State may similarly request of the child or the child's attorney a list of witnesses intended to be called on behalf of the child and a summary of the testimony expected of each."

ior." Arguing that defense counsel, again, failed to provide written notice of the witness and his expected testimony, the state objected to any continuance for Dr. Greer. Additionally, the state argued that the testimony was irrelevant and inadmissible under Rule 401 of the Rhode Island Rules of Evidence.[4] Defense counsel admitted that he did not provide the state's attorney with written notice about this witness or his proposed testimony. The trial justice found that defense counsel violated Rule 10 and, additionally, that Dr. Greer's testimony would be irrelevant to the issues before the court. After this exchange, Miguel rested, and did not renew his motion for judgment of acquittal.

After the two-day hearing, the trial justice found "beyond a reasonable doubt, in fact, beyond any doubt" that Miguel was delinquent on all three charges. In passing on the credibility of the witnesses, the trial justice found that Pablo "was as credible as a witness could possibly be." On October 2, 2008, Miguel was sentenced to the training school.[5] Additionally, sex offender treatment and registration were made a condition of Miguel's sentence. This timely appeal followed.

### Standard of Review

■ This Court previously has declared that "[t]he deferential standard of review we follow when considering an appeal from an adjudication of delinquency is to review the record to determine 'whether legally competent evidence exists therein to support the findings made by the Family Court trial justice.'" *In re Andrey G.*, 796

A.2d 452, 455–56 (R.I.2002) (quoting *In re Ryan B.*, 739 A.2d 232, 235 (R.I.1999)). Additionally, we give great deference to the findings of fact made by the trial justice, and we will not disturb such findings unless he or she overlooked or misconceived material evidence or otherwise was clearly wrong. *In re Vannarith D.*, 731 A.2d 685, 688–89 (R.I.1999).

### Analysis

### I

### Evidentiary Rulings

### Defense Counsel's Failure to Comply with Rule 10

■ The respondent first challenges the trial justice's rulings precluding his mother and Dr. Greer as witnesses, based upon defense counsel's failure to comply with Rule 10.[6] Rule 10(a) provides that the attorney for the state, by written request, may ask the juvenile's attorney to provide a list of witnesses expected to be called to testify on behalf of the respondent and to provide a summary of their testimony. Rule 10(c) governs the trial justice's options when a party or the party's attorney fails to comply with discovery obligations. Rule 10(c) provides:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Rule or with an order issued pursuant to this Rule, it may order such a party to provide the discovery or inspection, grant a continu-

---

4. Rule 401 of the Rhode Island Rules of Evidence provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

5. Miguel since has finished his sentence at the training school.

6. Defense counsel at oral argument analogized this argument as the antithesis to the Na'Vi greeting "I see you" from James Cameron's popular cinematic epic, "Avatar." We think that an analogy to "Gone With the Wind" would have been more appropriate.

ance, or make such other order as it deems appropriate. *Upon finding a willful failure to comply, the court may prohibit the offending party from introducing in evidence the material or the testimony of a witness whose identity or statement was not disclosed.*" (Emphasis added.)

It is undisputed that defense counsel failed to provide the state with an appropriate discovery response containing the names of Miguel's mother and Dr. Greer. Miguel argues on appeal, however, that the trial justice failed to find a "willful failure to comply," and thus, the witnesses should have been permitted to testify.

■ We are mindful that "the admissibility of evidence is placed within the sound discretion of the trial justice whose determination of admissibility will not be disturbed on review 'unless a clear abuse of that discretion is apparent.'" *In re Vannarith D.*, 731 A.2d at 689 (quoting *State ex. rel. Town of Middletown v. Anthony*, 713 A.2d 207, 210 (R.I.1998)); *see also State v. Martinez*, 824 A.2d 443, 450 (R.I.2003) (recognizing that the trial justice's decision to exclude evidence is not reversible error unless there was an abuse of discretion that caused substantial injury to the party seeking to introduce the evidence). Additionally, the trial justice is in the best position to determine whether harm has resulted from an attorney's failure to comply with discovery. *State v. Musumeci*, 717 A.2d 56, 60 (R.I.1998).

With respect to Miguel's mother, the trial justice properly found that defense counsel failed to comply with Rule 10. Defense counsel explained that he discussed with a previous prosecutor that he anticipated calling Miguel's mother; but he admitted that he did not provide written notice.

"[Court] The objection was that you did not provide the State with notice of this witness and a summary of her testimony. Could you respond to that, please?

"[Defense Counsel] I don't feel it would be any prejudice to the State, Your Honor. I discussed this possibility with prior counsel.

"[Court] You didn't provide written notice.

"[Defense Counsel] I didn't provide written notice, no."

The trial justice found that:

"the [respondent] had ample opportunity to provide the State with a list of witnesses and the summary of their testimony. That was not done. * * * [T]his matter has been continued a number of times. I believe the State would be prejudiced by hearing this witness'[s] testimony, as they did not have ample opportunity to prepare Cross Examination. They have no idea what this witness is going to testify to * * *."

Additionally, with respect to Dr. Greer, defense counsel again admitted that he did not comply with the discovery rules. The trial justice found that counsel did not comply with Rule 10, and denied respondent's request for continuance, effectively excluding Dr. Greer's testimony.

Rule 10(c) allows the trial justice to exclude evidence upon finding that there was a "willful failure to comply." Black's Law Dictionary defines "willful" as "[v]oluntary and intentional." Black's Law Dictionary 1737 (9th ed.2009). The evidence in the record is clear. Defense counsel admitted that he did not comply with Rule 10 and offered no excuse for this omission. It is our opinion that this was voluntary and intentional, and thus, falls within Rule 10(c). We perceive no basis for holding that the trial justice abused her discretion in enforcing the rule as written.

### Evidentiary Issues Pertaining to Dr. Greer's Testimony

██ The respondent next argues that the trial justice abused her discretion when she refused to allow Dr. Greer to testify. He contends that the proffered evidence was material to whether Miguel was likely to commit sexual abuse. According to defense counsel, Dr. Greer would testify that Miguel had no history of being sexually abused, and that "there has never been any evidence he either suffered any sexual or physical abuse or any form of abuse, or a history which suggested he has a history of inappropriate sexual behavior." The trial justice found that his testimony would be irrelevant, stating that, "[t]his Court [will] not entertain an expert's testimony that is his belief that [Miguel], or anybody, has not committed any act of sexual inappropriateness. I don't know how the doctor can say that with a reasonable degree of certainty."

We agree with this ruling. On appeal, respondent argues that the recent decision of the United States Court of Appeals for the First Circuit, *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72 (1st Cir.2009), is controlling on whether it is reversible error for a trial justice to bar testimony of a key witness in light of the availability of less severe sanctions. The case at bar, however, easily can be distinguished from *Esposito*. The First Circuit held that the judge's decision to preclude the expert witness from testifying effectively amounted to a dismissal of the plaintiff's case because the plaintiff had a great need for the witness. *Id.* at 78–79 (recognizing that "[b]oth of the parties acknowledge that the decision to exclude the [p]laintiff's expert as a result of missing the discovery deadlines will, without much doubt, effectively

dispose of the case"). In the case at bar, however, the proffered testimony of the expert witness, Dr. Greer, was wholly irrelevant. It would by no means be dispositive to the outcome of the case; in fact, it is our opinion that it would have had no evidentiary value whatsoever.

Additionally, we reject respondent's contention that Dr. Greer's testimony falls within the provisions of Rule 404(a)(1) of the Rhode Island Rules of Evidence. That rule provides that evidence of a person's character, in certain circumstances, may be admissible to prove the existence of a pertinent character trait. In *State v. Benoit*, 697 A.2d 329, 331 (R.I.1997), this Court held that "excluding evidence of good character in respect to a pertinent trait cannot generally be considered harmless [error]." Here, however, the proffered testimony would not serve to prove a pertinent character trait; it would not serve to prove any character trait. Indeed, it is difficult for this Court to fathom what evidentiary purpose this "opinion" would further. Thus, we cannot state that the trial justice abused her discretion, nor that there would have been a different outcome had the testimony been allowed.

### Compulsory Process Clause Violation

██ Finally, respondent argues that the trial justice's refusal to allow Miguel's mother and Dr. Greer to testify, denied him his fundamental right to present a defense under the Sixth Amendment to the United States Constitution [7] and thus violated the compulsory process clause therein. This Court reviews allegations that constitutional rights have been infringed *de novo. State v. Gehrke*, 835 A.2d 433, 436 (R.I.2003).

---

7. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right

* * * to have compulsory process for obtaining witnesses in his favor * * *."

The respondent, however, failed to present this argument to the trial justice. This Court's "raise-or-waive" rule precludes our consideration of an issue that was not raised or articulated at trial. *Resendes v. Brown*, 966 A.2d 1249, 1254 (R.I.2009). We have recognized that an exception to the raise-or-waive rule arises when basic constitutional rights are involved; however, "the alleged error must be more than harmless, and the exception must implicate an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial." *State v. Breen*, 767 A.2d 50, 57 (R.I.2001). The respondent does not meet this exception.

In the case at bar, the proffered evidence from Miguel's mother was unnecessary [8] and the proposed testimony from Dr. Greer was inadmissible and irrelevant; thus, we are satisfied that the trial justice's decision to preclude their testimony was not an abuse of discretion.

## II

### Motion for Judgment of Acquittal

The respondent's second argument on appeal concerns the trial justice's decision to deny Miguel's motions for acquittal.[9] Although it has not been raised by the state, we are not convinced that this issue properly was preserved. At the conclusion of the state's case, Miguel moved for judgment of acquittal; this motion was denied. Miguel proceeded to present a defense, but then failed to renew the motion at the close of evidence. "It is well established that the 'denial of a motion for judgment of acquittal made at the close of the state's case is preserved for appeal only if the defense has rested its case * * * or renews the motion at the conclusion of the presentation of all the evidence.'" *State v. Disla*, 874 A.2d 190, 195 (R.I.2005) (quoting *State v. Andreozzi*, 798 A.2d 372, 374 (R.I.2002)). Consequently, if the respondent fails to renew the motion, "any review of the denial of the judgment of acquittal is foreclosed." *State v. Clark*, 974 A.2d 558, 569 (R.I.2009) (quoting *State v. Colbert*, 549 A.2d 1021, 1023 (R.I.1988)). Thus, respondent did not properly preserve this issue for appellate review.

Nonetheless, even if the question properly was before us, we would affirm the trial justice's finding of delinquency. On review of a judgment of acquittal, this Court will apply the same standards as the trial justice. *State v. Sivo*, 809 A.2d 481, 487 (R.I.2002). "We view the evidence in the light most favorable to the prosecution, giving full credibility to its witnesses, and drawing all reasonable inferences consistent with guilt." *State v. Grant*, 946 A.2d 818, 826 (R.I.2008). "If such evidence, 'viewed in this light, is sufficient to support a verdict of guilty beyond a reasonable doubt, the motion must be denied.'" *Id.*

---

8. Pablo already had spoken about the family hostilities that Miguel's mother would have disclosed if she had testified. Defense counsel asked Pablo, "[s]o you knew your mother didn't like Christian anymore after you went into the second grade; didn't you?" and Pablo replied, "[y]es." Then, defense counsel asked Pablo, "it was after you realized your mother didn't like Christian anymore, that you decided to tell these stories; isn't that true?" and Pablo responded in the affirmative.

9. We note that this is a jury-waived trial. Technically, respondent should have moved for a motion to dismiss rather than a motion for acquittal. *See State v. McKone*, 673 A.2d 1068, 1072 (R.I.1996) (recognizing that in a jury-waived trial, "the appropriate motion by which a defendant may challenge the legal sufficiency of the state's trial evidence at the close of the state's case is by motion to dismiss").

(quoting *State v. Mondesir,* 891 A.2d 856, 861 (R.I.2006)).

With this standard in mind, we are satisfied that the trial justice's findings were correct. The trial justice found:

> "This young boy testified before this Court yesterday and was a better witness than most adults I've seen.* * * He was young, but bright. He was articulate.* * * He was as credible as a witness could possibly be."

On the other hand, the trial justice found Miguel's testimony to be wholly lacking:

> "[The respondent] doesn't remember anything. His memory was more vague than the eight-year-old child."

■ We are mindful that "[g]enerally the crime of sexual molestation depends upon the credibility of the complaining witness as opposed to the credibility of the [respondent]." *Benoit,* 697 A.2d at 331. In this case, Pablo's testimony was clear and concise, and we discern no evidence of the "pervasive inconsistencies" that respondent insists exist between the state's two witnesses.[10]

Additionally, we note that Miguel's testimony was lacking, at best. He could not recall basic everyday information, such as the name of his employer. He could not recall how long he worked at a particular after-school job. He could not even recall *if* there was a supermarket in his neighborhood; nonetheless, he contended that he had never been to the supermarket parking lot with Pablo. It is this Court's opinion that there was ample foundation for the trial justice to find that Miguel's testimony lacked credibility, and thus, even if respondent properly preserved this

argument on appeal, it would not change the result.

## III

### Due Process Violation

■ The respondent's final contention on appeal is that his due process right to present a defense was violated because the state failed to present sufficient information about the charges; specifically, he contends that the state did not provide exact dates when the sexual molestations occurred. The respondent argued to the trial justice that it was difficult to defend the case because the charges were "lacking in specificity and time and place." We deem this argument without merit.

■ We are mindful that this Court reviews allegations of constitutional infringements *de novo. Gehrke,* 835 A.2d at 436. We also note that it is well settled in this jurisdiction that the state does not have to prove the exact date a crime occurs, but rather may allege that the acts occurred within a certain timeframe. *State v. Pray,* 690 A.2d 1338, 1342 (R.I. 1997) (citing *State v. Brown,* 619 A.2d 828, 832 (R.I.1993); *State v. McKenna,* 512 A.2d 113, 114–15 (R.I.1986)); *see also Pierce v. Wall,* 941 A.2d 189, 194 (R.I.2008) (recognizing same).

In the case at bar, the trial justice properly indicated that the court would not expect an eight-year-old to remember the specific dates of the incidents, and she recognized that the state was not required to prove the exact dates of the incidents. Additionally, she found that Pablo was a

10. Pablo testified that during the first incident, he and Miguel were sitting in the back seat and then moved to the front seat when the molestation occurred. Caroline testified that Pablo told her that the molestation occurred in the back seat. Additionally, Pablo testified that when he told Caroline what occurred in the supermarket parking lot, she was in the guest bedroom. Caroline testified that she was in her bedroom. These inconsistencies are hardly pervasive.

credible witness. Pablo testified that the approximate time period when the events occurred was during the summer of 2007. Further, he testified about the circumstances of the incidents, their nature, and their location. In one instance, he even described the clothing that Miguel was wearing. There is nothing in the record before us demonstrating that the respondent was precluded from presenting a defense. Additionally, even if the information or trial testimony referred to specific dates, we note that this would have had no effect on Miguel's defense. It is clear from the record that Miguel's defense was based on the contention that Miguel and Pablo *never* were alone together. Therefore, because the respondent denied that he spent time alone with the victim, whether he did not do so on a specific date was irrelevant.

### Conclusion

For the reasons stated in this opinion, we affirm the adjudication of delinquency and direct that the record be remanded to the Family Court.