Michael J. KOZIOL

v.

Mary J. KOZIOL.

No. 97–511–Appeal.

Supreme Court of Rhode Island.

Nov. 2, 1998.

John E. McCann, Providence, for plaintiff.

Jerry L. McIntyre, Providence, for defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on appeals by the plaintiff, Michael J. Koziol, from Family Court decisions that awarded alimony and child support and distributed marital assets. After the appeals were filed, the Family Court issued a final judgment of divorce. Neither the plaintiff, who had filed a complaint for divorce, nor the defendant, Mary J. Koziol, who had counterclaimed for an absolute divorce, challenged the divorce itself. The defendant argued, however, that the plaintiff's appeals were mooted by the final judgment of divorce that reaffirmed the property division, the alimony, and the child support awards.

■ Although previously we have not addressed directly the propriety of issuing a final judgment of divorce while appeals of other matters set forth in an interlocutory decision remain pending, we hold that such action is proper. Because the Family Court justice did not abuse his discretion, we affirm the awards of alimony and child support and the distribution of marital assets. A brief summary of the facts at issue in the appeals follows.

### Facts and Travel

Michael J. Koziol (Michael) and Mary J. Koziol (Mary) were married on July 22, 1978. At the time they were married, the parties resided in Springfield, Illinois, where Michael worked as an accountant, and Mary worked as a second-grade teacher and reading spe-cialist. In 1993, Michael entered an executive MBA program, the expense for which was paid with joint savings and a $15,000 inheritance that Mary had received. Mary took year-long leaves of absence from her employment after the births of each of their two children. During the marriage, Mary had primary responsibility for homemaking and child care duties.

In 1989, Michael accepted an administrative position at Memorial Hospital in South Bend, Indiana. At that time, Mary gave up her eleven-year teaching career. Three years later, Michael accepted a position as Vice President of Financial Operations at Rhode Island Hospital. The parties and their two children moved to Rhode Island and purchased a home for approximately $350,000.

In 1994, Michael's position at Rhode Island Hospital was eliminated, and he received a severance package that included one year's salary plus bonuses. In April of 1995, Michael secured employment as the Chief Financial Officer of the Massachusetts Eye and Ear Infirmary. At the time of divorce, Michael's salary was $124,000 per year, not including bonuses.

Michael filed for divorce on September 22, 1995. The trial was conducted between January 2, 1997 and February 11, 1997. On April 3, 1997, the Family Court filed a decision that awarded joint custody of the two minor children with physical possession to Mary. The decision also awarded child support and alimony to Mary and distributed the marital assets using Mary's expert's appraisal of the marital domicile. The court awarded child support in the amount of $1,800 per month, as well as alimony in the amount of $2,500 per month for the first year, $1,800 per month for the next four years, and $1,000 per month for the subsequent five years. On April 21, 1997, Michael filed an appeal of this decision. On September 4, 1997, the Family Court entered its decision pending entry of final judgment, incorporating the previous decision. Michael appealed this decision on September 5, 1997, and on September 9, 1997, filed a motion to enter the final judgment of divorce. On September 24, 1997, he filed a clarification of notice of appeal in

which he stated that he was appealing only the awards of child support, alimony, and asset distribution and not the grant of divorce. On September 29, 1997, the Family Court entered a final judgment of divorce. The final judgment included the awards of alimony, child support, and distribution of marital assets that had been set forth in the decision pending entry of final judgment.

### Viability of the Appeals

Mary presented two arguments challenging Michael's appeals. First, she argued that if Michael was appealing the final judgment of divorce, such an action was barred because no appeal lies from an entry of final judgment. Second, she argued that if Michael was appealing the interlocutory decision and decision pending entry of final judgment, his appeals were rendered moot by the issuance of the final judgment that incorporated the terms of those decisions.

■ Michael appealed the April 3, 1997 decision on April 21, 1997, and appealed the September 4, 1997 decision pending entry of final judgment on September 5, 1997. He then filed a clarification of appeal in respect to both appeals on September 24, 1997. Both the language of the applicable statute and Rhode Island case law make clear that a party to a divorce may appeal an interlocutory decision or a decision pending entry of final judgment. Specifically, G.L.1956 § 14–1–52(a) provides that "[a] decision granting a divorce shall be appealable upon, [sic] entry." In the case of *Mattera v. Mattera*, 669 A.2d 538 (R.I.1996), this Court reviewed the awards of child custody, child support, and the assignment of the marital estate, all made in a decision pending entry of final judgment. Similarly, in ` Thompson v. Thompson*, 642 A.2d 1160 (R.I.1994), this Court reviewed the distribution of marital assets set forth in an amended interlocutory decision pending entry of final judgment. Therefore, Michael's appeals of the interlocutory decisions were timely.

It has remained unsettled, however, whether a Family Court justice is required to stay the entire final judgment of divorce that may include child support or alimony, when an appeal is pending on issues other than the divorce itself. Rule 1.15 of the Family Court Rules of Practice provides in pertinent part, "After the expiration of twenty (20) days from the entry of the Decision Pending Entry of Final Judgment *** *and no appeal having been taken* *** counsel shall prepare the final judgment." (Emphasis added.) In other words, is a Family Court justice permitted to enter a final judgment on the divorce while other issues contained in the decision pending entry of final judgment remain on appeal?

In *Centazzo v. Centazzo,* 556 A.2d 560 (R.I. 1989), this Court considered but did not decide whether a Family Court justice can issue a final judgment of divorce during the pendency of an appeal on other issues. The Court explained:

> "It is true that when an appeal is taken from a Family Court judgment, generally the Family Court proceedings are stayed pending the outcome of the appeal. *** However, there are various exceptions to this general rule. One exception is that counsel fees may be awarded during the pendency of an appeal." *Id.* at 563.

The Court pointed to Rule 7 of the Supreme Court Rules of Appellate Procedure as the source of authority to grant the request for a final decree of the divorce itself, while the appeal of other matters in the interlocutory decision remains pending:

> "Rule 7 expressly authorizes a Family Court justice to make such orders as are necessary for the protection of the rights of the parties pending the appeal. It is couched in general language and is sufficiently broad for a motion for entry of final judgment of divorce to have been heard and granted by the Family Court." *Centazzo,* 556 A.2d at 563.

■ We now formally adopt this dictum from *Centazzo* and hold that a Family Court justice may issue a final decree of divorce while other items in the decision pending entry of final judgment remain on appeal. A final judgment of divorce must be stayed only when the divorce itself is appealed. To hold otherwise would require that a final decree of divorce be issued only upon the resolution of all appeals. If one party en-

gaged in a flurry of appeals of issues other than the divorce itself, the divorce would be delayed, often to the detriment of one or both parties. *See Pakuris v. Pakuris*, 95 R.I. 305, 186 A.2d 719 (1962) (holding that a decision for divorce does not terminate the marriage and the parties remain husband and wife until the entry of the final decree).

■ In this case, the fact that the Family Court justice incorporated the appealed elements in the final judgment did not render moot Michael's appeals of those issues. Therefore, we hold that Michael timely filed his appeals of the decision and of the decision pending entry of final judgment; we also hold that these appeals remained valid despite the Family Court's issuance of the final judgment on the issue of divorce.

### Child Support

On appeal, Michael alleged that the trial justice miscalculated the child support award by calculating the parties' gross incomes without taking Mary's alimony award into account. In setting forth the definition of gross income, Family Court Administrative Order 87–2, subsection (IV)(B)(1) (effective Oct. 1, 1987) states that, "[g]ross income includes, but is not limited to *** alimony or maintenance received." Here, however, alimony appears to refer to alimony awarded to a party from a prior marriage, not alimony awarded in the current divorce proceedings.

■ Moreover, the "Guidelines are intended to serve as a floor or base, and not as a ceiling or cap, in setting child support amounts." Family Court Administrative Order 87–2, subsection (III). The guidelines encourage a Family Court justice to exercise broad discretion "in cases where application would be inequitable for either of the parties or to the child." *Id.* "It is well established that the appropriate award of child support is to be determined by the trial justice in his or her sound discretion, and we shall not disturb such a determination on review absent a clear abuse of that discretion." *Mattera*, 669 A.2d at 542. Because we conclude that the Family Court justice did not abuse his discretion, we affirm the award of child support.

### Distribution of Marital Property

■ Michael also contended that the trial justice erred in relying on the valuation of the marital domicile given by Mary's appraiser instead of that given by his own appraiser, and that the court did not state sufficiently the factual basis for this choice. In his decision filed on April 3, 1997, the trial justice discussed the parties' appraisers at length, explaining that both "appear[ed] to be well-qualified and competent." After outlining the different methods of comparison used by the two appraisers, the court concluded that it "believe[d] that the factors of living area size and proximity of location outweigh[ed] the consideration that plaintiff's [Michael's] comparable sales [were] of more recent vintage. Thus the Court finds the fair market value of the marital domicile to be $340,000."

■ "The equitable distribution of marital assets is within the discretion of the trial justice." *Thompson*, 642 A.2d at 1162. "This Court will not disturb a trial justice's findings unless it can be shown that the justice was clearly wrong or has overlooked or misconceived material evidence." *Mattera*, 669 A.2d at 543. It is our opinion that the trial justice here considered all of the statutory factors, made a reasoned choice between the appraisals of two qualified appraisers, and carefully explained the basis for his decision. We conclude, therefore, that the trial justice properly exercised his discretion in valuating the marital domicile.

■ Using this valuation of the marital domicile, Mary was awarded approximately 58 percent of the marital assets. In making this distribution, the trial justice took into account all the statutory criteria. In light of the fact that the Family Court justice found Michael's conduct to be the primary cause of the parties' divorce, we conclude that this distribution was reasonable and within the court's discretion.

### Alimony

In addition, Michael has argued that:

"the trial justice mistakenly concluded that at the time of trial, Mary would be unable to secure immediate employment as she lacked the appropriate credentials which

would allow her to obtain a full-time teaching position in Rhode Island. The trial justice also focused solely on Michael's 'bad' conduct during the marriage when making his award of alimony and distribution of the marital assets."

Further, Michael contended that "[t]he trial justice committed error in giving defendant/appellee Mary J. Koziol alimony for a period of time longer than she requested."

In making an alimony award, a judge must consider the factors set forth in G.L.1956 § 15–5–16. These factors include the length of the marriage, the conduct of the parties during marriage, the health, age, station, occupation, amount and source of income, vocational skills, and employability of the parties, and the liabilities and needs of the parties. See § 15–5–16(b)(1) (setting out the statutory factors to be considered). In addition, a judge must consider the extent to which a party may be unable to support himself or herself adequately. Section 15–5–16(b)(2)(ii).

In this case, the trial justice considered all these factors and provided a reasoned basis for his ruling. Both parties were found to be in good health. The court noted the extended length of the parties' marriage, the difference between the parties' employability and standard of living, the "gross disparity" in the parties' incomes, Michael's conduct including his relationship with another woman and his "precipitous departure from the marital domicile and defendant's [Mary's] exemplary behavior throughout the marriage." The court also noted that Mary made signifi-cant contributions throughout the marriage and had primary responsibility for child care and homemaking duties. At the time that Mary requested alimony for seven years, she also requested that the mortgage payments on the marital domicile be assigned to Michael. Although the trial justice awarded Mary alimony payments for three years longer than she had requested, he did so after assigning the first mortgage to her. Additionally, the alimony payments decline in amount over the ten years.

■ Because the trial justice considered the statutory criteria, we shall not disturb the award of alimony. *Thompson,* 642 A.2d at 1164. This holding does not preclude Michael from returning to the Family Court for a redetermination of alimony in the event that Mary's economic status changes and/or she becomes self-supporting.

### Conclusion

In conclusion, for the foregoing reasons, we deny and dismiss the plaintiff's appeals, affirm the judgments of the Family Court, and return the papers in the case to the Family Court.