**In re JAMES C.**

**No. 2000–443–Appeal.**

Supreme Court of Rhode Island.

May 2, 2005.

Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch, East Greenwich, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY and ROBINSON, JJ.

## OPINION

PER CURIAM.

James C. (respondent or James) appeals from an order of the Family Court requiring him to pay $1,235 as restitution for his portion of the damage inflicted by him on a vehicle that had been vandalized by him and another individual. At issue in this appeal is whether two repair estimates proffered by the state were improperly admitted into evidence at the hearing on restitution. For the reasons set forth below, we hold that the admission of this evidence did not violate the respondent's Fourteenth Amendment right to due process, and we affirm the Family Court's restitution order.[1]

On the night of October 24, 1998,[2] respondent James C. (then thirteen years old) and another juvenile committed larceny of and vandalized certain property belonging to one Paul Znamirowski. Among the items of vandalized property was Mr. Znamirowski's 1970 Ford Mustang, which he was in the process of restoring.

Thereafter, respondent was named in three petitions that the state filed in the Family Court. The first petition alleged that respondent was delinquent as a result of breaking and entering into the victim's home, while the second and third petitions alleged that respondent was wayward as a result of committing larceny and willfully and maliciously injuring Mr. Znamirowski's property. As the result of a plea agreement, respondent admitted to both the breaking and entering and the larceny petitions, and the state dismissed the third petition (willfully and maliciously injuring Mr. Znamirowski's property). The Family Court placed James on probation until his sixteenth birthday, and he was given a one-year suspended sentence to the training school. As a condition of probation, respondent agreed to perform fifty hours

1. This matter came before the Supreme Court for oral argument on October 6, 2004, pursuant to an order directing the parties to appear and show cause why the issue raised in this appeal should not be summarily decided. The parties rested on their submissions; and, after examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should be summarily decided.

2. This is the date of the offense as agreed to by the parties at the close of the evidence during the restitution hearing.

of community service and to make his share of restitution to Mr. Znamirowski with respect to all three petitions.

The attorney representing James requested a restitution hearing to determine the monetary value of the damage to Mr. Znamirowski's Ford Mustang. *See* G.L. 1956 § 12–19–33. At the hearing before the Family Court, James admitted to damaging the vehicle, but his attorney objected to the admission of two documents that contained estimates from two different body shops, each estimating the actual cost of returning Mr. Znamirowski's vandalized vehicle to its previous condition.[3] The court overruled the objections[4] and allowed the two documents to be admitted as full exhibits.[5] In a bench decision rendered on May 10, 2000, the court fixed restitution at $1,235 (one half of $2,470, which was the lesser of the two estimates).

■ On appeal, James argues that the two estimates were improperly admitted as evidence in the hearing on restitution.[6]

The United States Supreme Court has interpreted the Due Process Clause of the Fourteenth Amendment to require "some kind of hearing" before a person is definitively deprived of a property or liberty interest. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("The Court has consistently held that some kind of hearing is required at some time before a person is finally deprived of his property interests. * * * We think a person's liberty is equally protected * * *."); *see generally* Henry J. Friendly, *"Some Kind of Hearing,"* 123 U. Pa. L. Rev. 1267 (1975).

■ The Family Court in this case correctly recognized that James had a property interest in the money that he would. be required to pay as restitution. Additionally, the Family Court correctly ruled that respondent had a liberty interest at stake, because he was given a suspended sentence, which could require him to serve one year at the training school in the event that he should fail to pay restitution.[7] Giv-

---

3. At the restitution hearing, Mr. Znamirowski testified that the two estimates were prepared at his request after his car had been vandalized.

4. "[Respondent's attorney]: To eleven and [twelve], I object based on the fact that it's not the best evidence. Obviously, they should bring in whoever made the statement. My client has an opportunity to his rights. This is a criminal act, or I suggest, that it's to cross examine that witness. We have a right to have the right to cross examine to have the documents to authenticate, and that hasn't been done. And to have the best document in. So, based on that, I object to those two documents being entered.
"THE COURT: It's a restitution hearing. The objection is overruled and the exhibits may be marked as full exhibits."

5. It does not appear that respondent's attorney requested a continuance in order to subpoena personnel from the body shops, nor did he present any other evidence tending to impeach the accuracy of the estimate.

6. Because this appeal requires us to consider a constitutional argument and also to address a legal question pertaining to the applicability of the Rhode Island Rules of Evidence, we review the Family Court decision on a *de novo* basis.

7. The court in *State of New Jersey In the Interest of D.G.W.,* 70 N.J. 488, 361 A.2d 513 (1976) reached a similar conclusion concerning the property and liberty interests that are implicated by restitution proceedings:

"The juvenile has an obvious 'property' interest in his earnings or other income to be paid over in satisfaction of the restitutionary amount. Additionally he has an obvious 'liberty' interest in his continued probationary 'freedom' which is subject to termination upon his unjustified failure or refusal to meet the restitutionary condition." *Id.* at 520–21.

en these considerations, we agree with the Family Court that this juvenile restitution hearing was subject to the due process requirements of the Fourteenth Amendment. *See State of New Jersey In the Interest of D.G.W.*, 70 N.J. 488, 361 A.2d 513, 521 (1976) (holding that when restitution is imposed as a condition of probation, the resulting deprivation of liberty and property interests "triggers the juvenile's entitlement to due process"); see also *In re Gault*, 387 U.S. 1, 30–31, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (holding that juvenile adjudicatory hearings require the essentials of due process and fair treatment); *In re Fiske*, 117 R.I. 454, 457, 367 A.2d 1069, 1072 (1977) ("Although a juvenile hearing need not provide all the safeguards of a criminal trial, it must measure up to the essentials of due process and fair treatment.").

■ It is important to bear in mind, however, that "due process" is a *flexible* concept. Adherence to formalized procedures and to rules of evidence is not always essential, and summary-type proceedings are sometimes permissible. *See, e.g., Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. * * * Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure."); *Moyer v. Peabody*, 212 U.S. 78, 84, 29 S.Ct. 235, 53 L.Ed. 410 (1909) ("[I]t is familiar that what is due process of law depends on circumstances. It varies with the subject-matter and the necessities of the situation."); *Barber v. Exeter–West Greenwich School Committee*, 418 A.2d 13, 20 (R.I.1980) ("Due pro-

cess is a flexible concept and the degree of protection afforded to an individual may vary with the particular situation."); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 789, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (holding that a probationer who violated parole must be accorded due process, but also indicating that "formal procedures and rules of evidence are not employed"); *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593 (stating that a parole revocation hearing may be "a narrow inquiry; * * * flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial"); *In the Interest of D.G.W.*, 361 A.2d at 523.

■ An order to pay restitution as a condition of probation is often part of the juvenile's sentence, and due process requires that the juvenile be accorded "some kind of hearing" to determine the amount of such restitution, although that proceeding may be conducted in a relatively summary fashion. *In the Interest of D.G.W.*, 361 A.2d at 523. It is our view that, when a juvenile is ordered to pay restitution, he or she is entitled to a hearing to determine the amount that must be paid, and at that proceeding he or she should have the opportunity to be heard and to confront witnesses. It should be noted, however, that the Rhode Island Rules of Evidence need not be adhered to at this type of hearing. *See* Rule 101(B)(3) of the Rhode Island Rules of Evidence ("The rules * * * do not apply [to] * * * proceedings for sentencing * * *."); *see also* 47 Am. Jur. 2d *Juvenile Courts and Delinquent and Dependent Children* § 12 (1995).

■ We concur with the statement in a well-known legal encyclopedia that, in this particular context, the court may "use any rational method of fixing the amount of restitution which is reasonably calculated

to make the victim whole and which is consistent with the purpose of rehabilitation." 47 Am. Jur. 2d *Juvenile Courts and Delinquent and Dependent Children* § 107 (1995).[8] Such a permissible "rational method" of fixing this amount may include a limited consideration of hearsay evidence. *See generally Richardson v. Perales,* 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (holding that, in a hearing conducted under the Administrative Procedures Act and the Social Security Act, hearsay is admissible provided that it be relevant and then stating that the "[t]he matter comes down to the question of the procedure's integrity and fundamental fairness"). The Family Court's consideration of the challenged evidence in this case comported with these principles.[9]

We hold that the Family Court committed no error by admitting the repair estimates in question and by finding the testimony of Mr. Znamirowski about these estimates to be credible.[10] We are confident that this procedure provided the respondent with at least that degree of due process to which he was entitled.

For the foregoing reasons, the judgment of the Family Court is affirmed. The papers of the case are to be returned to the Family Court.

Justice SUTTELL did not participate.

---

8. At the hearing on restitution in this case, the Family Court explicitly quoted this language from 47 Am. Jur. 2d. *Juvenile Courts and Delinquent and Dependent Children,* § 107 (1995).

9. We are convinced that the hearing in this case was not overly summary in nature or roughshod, but we do not mean to suggest that a complete absence of procedural safeguards would pass muster. "[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Boddie v. Connecticut,* 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

10. In concluding that the estimates in question were sufficiently reliable to be admitted as evidence in a restitution hearing, we think it not irrelevant to note that respondent offered no evidence suggesting bias or fraud on the part of the body shops that prepared the estimates. Further, the two independent estimates were nearly identical (one for $2,500 and the other for $2,470). *See Richardson v. Perales,* 402 U.S. 389, 403–04, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (noting that the consistency of independent medical reports when compared with each other tends to support the reliability and credibility of the reports in spite of their hearsay nature).