Roy C. McDONOUGH

v.

Kelly M. McDONOUGH.

No. 2007–262–Appeal.

Supreme Court of Rhode Island.

Jan. 12, 2009.

H. Jefferson Melish, for Plaintiff.

Paul P. Pederzani, Warwick, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The plaintiff, Roy C. McDonough, appeals from a Family Court order granting the request of the defendant, Kelly M. McDonough, to relocate the parties' two minor children to Indiana. The plaintiff also contends that the trial justice exceeded the scope of her authority by granting interim relief allowing the defendant to relocate the children while this appeal was pending. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After examining the written and oral submissions of the parties, we conclude that this appeal may be resolved without further briefing or argument. For the reasons set forth in this opinion, we affirm the Family Court orders.

## I

### Facts and Procedural History

The plaintiff, Roy,[1] and defendant, Kelly, were married on August 27, 1988, and have

---

1. We identify the parties by their first names solely for the sake of clarity. No disrespect is intended.

three children: Tyler, eighteen years old at the time of trial; Melainy, eleven years old; and Emma, two years old. Roy filed for divorce in September 2006 on the grounds of irreconcilable differences, seeking, *inter alia*, joint custody and the continuation of the children's residency in Rhode Island. Kelly counterclaimed for divorce, requesting permission to relocate their minor children outside Rhode Island. The trial commenced in June 2007, at the conclusion of which the parties entered into a property settlement agreement resolving all issues save the relocation of the children.[2]

We need not publish in detail all the evidence adduced at trial concerning the parties' nearly twenty-year marriage. The trial justice summarized their marriage as "tumultuous, characterized by Roy's alcoholism, domestic violence, [and] physical altercations between family members." We recount, therefore, only those facts necessary for an understanding of the issues raised in this appeal.

Roy and Kelly were married in Rhode Island, but moved shortly thereafter to Indiana, where they lived for a short time with Kelly's parents before getting their own apartment. Roy returned to Rhode Island after less than a year; Kelly followed two months later with their son, Tyler. The couple temporarily lived with Roy's parents, eventually settling in Exeter.

Various witnesses, including Roy, testified about Roy's alcohol use, as well as a number of incidents of Roy's abusive conduct—seemingly correlated behavior. According to Roy, his excessive drinking began around 1998. His abusive behavior, however, surfaced early in their marriage. While the parties were residing with Kelly's parents in Indiana, in their first year of marriage, Roy and his mother-in-law had a physical altercation for which he was arrested and criminally convicted. Sandra Burleson, Kelly's mother, explained that the incident occurred a few weeks before Kelly was due to deliver Tyler. According to Mrs. Burleson, Roy came home and began calling Kelly derogatory names. When Mrs. Burleson intervened, Roy struck her, bursting both her eardrums; he then kicked her when she fell to the floor. Mrs. Burleson also testified that when her daughter Christy attempted to come to her aid, Roy violently threw Christy against a wall, fracturing her arm.

Kelly and Tyler both testified that Roy's alcohol abuse was at its worst roughly three years before trial. In 2003, Roy was criminally charged in Rhode Island with domestic assault upon Kelly, to which he pled nolo contendere and received a one-year suspended sentence. Roy's mother, Donna McDonough, testified that Roy was admitted to Butler Hospital after another alcohol-related incident in 2005. Roy testified that, in 2004, while under the influence of alcohol, he lost control of the vehicle he was operating in which Tyler was a passenger. Roy was in a second automobile accident while on his way to pick up his daughter Emma. Although Roy admitted

---

2. The property settlement agreement provided for joint custody of the minor children, physical placement of the minor children with defendant mother, and liberal visitation rights for plaintiff father. The agreement included a visitation schedule for the father in the event the court permitted relocation to Indiana. The parties also agreed that Rhode Island would be considered the children's home state for jurisdictional purposes and for enforcement of the agreement. The trial justice approved the terms and incorporated, but did not merge, the agreement, except "for all issues concerning the minor children," with the decision pending entry of final judgment entered on July 19, 2007.

to drinking during his lunch breaks from work, he denied that he had been drinking before this particular accident. In June 2005, Roy slapped Tyler, then aged seventeen, after Tyler purportedly swore at him, and the two engaged in a heated physical altercation.

After the altercation between Roy and Tyler, Kelly decided she "could no longer stay in the situation." In August 2005, she took their three children to Indiana to visit her family and attend the state fair, as they did every summer. Normally they would stay for two weeks, but this time Kelly decided they were not going back to Rhode Island. She did not tell the children until they were already in Indiana. They lived with Kelly's parents for a few months, and they then moved into a four-bedroom apartment across the street. The plaintiff testified that he was not consulted about his wife's move to Indiana, and, although he did not agree with it, he thought she might have needed some time away. He said he spoke frequently with his wife and with his daughter Melainy while they were in Indiana. Emma was still too young to carry on a telephone conversation. The plaintiff did not visit his children while they were in Indiana, stating that he was not financially able to do so.

Kelly moved back to Rhode Island in July 2006 with the children because, she said, she missed Roy. The reconciliation was not successful, however, and in September 2006 Roy filed a petition for divorce.

Roy began seeing a counselor for his alcohol abuse a few months after his family left for Indiana, and he remained in treatment throughout trial. He testified that he had been sober since the fall of 2006, when the Family Court issued an order requiring he refrain from drinking. However, Roy also admitted that he had sought alcohol counseling, unsuccessfully, on three or four previous occasions. Kelly testified that she suspected Roy of drinking on two or three different occasions since the court order. She said she noticed he was "sluggish or tired or just laid on the bed." Tyler also believed his father was still drinking. Melainy, however, told the trial justice that her father had not been drinking recently. Roy's mother, Donna McDonough, and his sister, Donna Nadiau, testified that, this time, Roy seemed to have finally been successful in combating his alcohol abuse. The counselor Roy had been seeing for over a year wrote in her report that "Roy has demonstrated a willingness to work on his issues. * * * We plan to continue to meet and work together on * * * abstinence from alcohol."

Members on both sides of Kelly's and Roy's family expressed a desire and willingness to be involved in the children's lives and to assist their parents in childrearing if the children were living nearby. Roy expressed strong reservations about the church in which his wife's parents were heavily involved, especially its lack of tolerance for people outside their faith. Mr. Burleson admitted that family members who are not baptized or do not attend church are not considered to be members of their community; in his view, they have "absent[ed]" themselves.

Melainy said she enjoyed spending time with her father and expressed reservations about moving to Indiana. She told the judge *in camera* that she did not like the area where her mother intended to live, did not like the school there, and did not feel close to her maternal grandparents or family. Melainy told the trial justice that Roy's family had more time for them and was more fun than Kelly's family.

On July 30, 2007, the trial justice issued a written decision in which she reviewed the testimony of the parties and the vari-

ous witnesses. She examined defendant's request to relocate in conjunction with the evidence presented and in accordance with the factors set out in *Dupré v. Dupré*, 857 A.2d 242 (R.I.2004).[3] The court concluded that it was in the children's best interests to relocate to Indiana. She found that Melainy's school performance had been affected by plaintiff's alcoholism, that the children had been subjected to domestic violence and their parents' on-again, off-again marriage, and that moving to Indiana would provide all of them with greater stability. She noted that defendant had decided to relocate to Indiana because her parents lived there, she would have better housing and employment opportunities, and the school system seemed more advanced.

The Family Court's decision generated a flurry of activity by both parties. Anticipating an appeal, defendant filed a motion on August 6, 2007, "to enforce compliance with marital settlement agreement and affirm relocation pending appeal." On the same day, plaintiff filed both an objection to defendant's motion and a motion for stay pending appeal pursuant to Rule 62 of the Family Court Rules of Procedure for Domestic Relations.[4] On August 7, 2007, the Family Court entered an order grant-ing defendant's motion to relocate. At a hearing on August 10, 2007, plaintiff informed the court that he intended to file an appeal. Based on his representation, the trial justice treated defendant's motion as a request for interim relief.

■ After argument by counsel, the trial justice granted the request for interim relief, allowing defendant to relocate with the children pending appeal.[5] The court found that this was "clearly in the best interest of the children, given the decision * * * already rendered in this matter and also in accordance with [Article I,] Rule 7 of the Supreme Court Rules of Appellate Procedure."[6] The trial justice thought that to conclude otherwise would be the equivalent of plaintiff "leapfrogging the authority of this court and the decision of this court." The court emphasized that the family had a long-standing history of domestic violence and alcoholism, that the trial had proceeded quickly to facilitate Melainy's start of school in the appropriate school system, and that defendant already had terminated her employment in Rhode Island and entered into a residential lease agreement in Indiana.[7]

3. *See* footnote 9, *infra.*

4. Rule 62 of the Family Court Rules of Procedure for Domestic Relations, titled "Stay of proceedings to enforce a judgment," provides in pertinent part:

"(d) * * * [T]he taking of an appeal from a judgment shall operate as a stay of execution upon the judgment during the pendency of the appeal, and no supersedeas bond or other security shall be required as a condition of such stay."

5. The Family Court denied plaintiff's motion for stay, pending appeal, on September 20, 2007.

6. Article I, Rule 7(a) of the Supreme Court Rules of Appellate Procedure, titled "Trial court orders for protection of parties pending appeal or petitions for review," provides in pertinent part:

"The justice or judge of the Superior, Family or District Court who entered the judgment, order, decree, or other determination from which review is being sought, or in case of his or her absence or disability, any justice or judge of the same court, may make such orders for injunction, giving bond, and the appointment of receivers, and such other orders as are needed for the protection of the rights of the parties until the appeal or petition for review shall be heard and determined by the Supreme Court * * *."

7. The trial justice made her ruling subject to review by the duty justice at the Supreme Court, an unnecessary condition we wish most fervently to discourage.

## II

### Standard of Review

 This Court will not disturb findings of fact made by the Family Court on the issue of custody and the best interests of the child unless the trial justice abused her discretion in making a particular award. *Berard v. Berard*, 749 A.2d 577, 579 (R.I.2000) (citing *Pettinato v. Pettinato*, 582 A.2d 909, 914 (R.I.1990)). An award will be affirmed unless the trial justice's factual findings overlooked or misconceived material evidence or were clearly wrong. *Id.* at 580. We have recognized that "[i]t is the trial justice who is in the best position to determine what factors may be relevant on a case-by-case basis, and his or her discretion in this regard should not be unduly constrained." *Dupré*, 857 A.2d at 257.

8. The factors established by *Pettinato v. Pettinato*, 582 A.2d 909, 913–14 (R.I.1990), are as follows:

"1. The wishes of the child's parent or parents regarding the child's custody.

"2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

"3. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings, and any other person who may significantly affect the child's best interest.

"4. The child's adjustment to the child's home, school, and community.

"5. The mental and physical health of all individuals involved.

"6. The stability of the child's home environment.

"7. The moral fitness of the child's parents.

"8. The willingness and ability of each parent to facilitate a close and continuous parent-child relationship between the child and the other parent."

9. The non-exhaustive factors incorporated in *Dupré v. Dupré*, 857 A.2d 242, 257–60 (R.I. 2004), are as follows:

"(1) The nature, quality, extent of involvement, and duration of the child's rela-

## III

### Discussion

#### A. Relocation

 It is eminently well established in the law that in granting child custody, placement, and relocation awards, the " 'paramount consideration' is the best interests of the child." *Dupré*, 857 A.2d at 251–52 (quoting *Africano v. Castelli*, 837 A.2d 721, 728 (R.I.2003)). In *Pettinato*, 582 A.2d at 913–14, this Court identified several critical though non-exhaustive "best interests of the child" factors.[8] For purposes of child-relocation custody disputes in particular, this Court, in *Dupré*, further identified additional relevant factors for consideration.[9] We reaffirmed that "[i]n this troubling and very difficult area of relocation, the ever-present beacon,

tionship with the parent proposing to relocate and with the non-relocating parent.
" * * *

"(2) The reasonable likelihood that the relocation will enhance the general quality of life for both the child and the parent seeking the relocation, including, but not limited to, economic and emotional benefits, and educational opportunities.
" * * *

"(3) The probable impact that the relocation will have on the child's physical, educational, and emotional development. Any special needs of the child should also be taken into account in considering this factor.

"(4) The feasibility of preserving the relationship between the non-relocating parent and child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
" * * *

"(5) The existence of extended family or other support systems available to the child in both locations.
" * * *

"(6) Each parent's reasons for seeking or opposing the relocation.
" * * *

"(7) In cases of international relocation, the question of whether the country to

as in all matters relating to the custody of children, is the best interests of the child" in light of current circumstances.[10] *Dupré,* 857 A.2d at 256.

The plaintiff recognized at oral argument the breadth of a trial justice's discretion in weighing the various factors that must be considered when deciding a relocation issue. He contends, however, that in this case the trial justice weighed past events disproportionately and overlooked or paid too little attention to current circumstances in evaluating the present best interests of the two minor children. He stresses his current sobriety and involvement in treatment, and he faults the trial justice for focusing on one incident of "inappropriate behavior" that occurred eighteen years ago, and his two criminal convictions in 1989 and 2003. He contends that the trial justice placed greater emphasis on Tyler's "biased testimony against his father" than on Melainy's expressed desire to live in Rhode Island. The plaintiff also asserts that the trial justice misconceived evidence, erroneously concluded that the children would have more stability in Indiana, and overlooked the *Pettinato* factors.

After reviewing the record and the trial justice's decision, we are of the opinion that there was substantial evidence to support her determination that relocation was in the best interests of the children. Here, the trial justice considered each enumerated *Dupré* factor, concluding that both parties have a good relationship with their two minor children, but that relocation to Indiana would nonetheless be in the girls' best interests.

The trial justice found that the children had been exposed to dysfunctional behavior in Rhode Island, largely because of Roy's alcoholism and temper, and that the presence of defendant's parents offered the girls more structure and greater stability in Indiana. The trial justice was concerned with the financial burdens associated with long-distance visitation, but she noted that the parties had already provided for visitation and agreed to split travel costs in the property settlement agreement, in the event of relocation. The trial justice considered the family "support network" available in both locations, concluding that "this factor weighs heavily in favor of relocation." Next, the trial justice discussed Kelly's motives in seeking to relocate, and she determined that there was a reasonable basis for Kelly's decision: her parents lived in Indiana, and there were better housing and employment opportunities. She concluded, "[a]ll of these variables indicate that Kelly's decision to relocate is well-thought out, in good faith and not motivated by a desire to punish Roy." Finally, the trial justice noted that "[m]any of the *Pettinato* 'best interest' factors overlap with or are similar to the

which the child is to be relocated is a signatory to the Hague Convention on the Civil Aspects of International Child Abduction will be an important consideration.
 "(8) To the extent that they may be relevant to the relocation inquiry, the *Pettinato* factors also will be significant."

10. The plaintiff erroneously asserts that defendant has the burden of proof on the issue of her request to relocate the children. This Court's precedent does not establish burdens or presumptions for an initial determination of child custody or placement (as opposed to post-final judgment relocation). *Dupré,* 857

A.2d at 260 (issue of primary placement was specifically left open for trial). Instead, the trial justice is squarely required to conduct a thorough analysis of the relevant factors incident to child relocation to reach a decision that will achieve and properly serve the best interests of the child. *Id.* Both parents share an equal burden of demonstrating with which parent the child's interests will be best served. *Id.* at 260–61. As this was an initial decision as to the placement of the children upon divorce, defendant bears no greater burden than plaintiff.

*Dupre* 'relocation' factors" that she had already reviewed. After weighing the various factors, she found that relocation to Indiana was in the best interests of the two minor daughters. She also affirmed the visitation schedule negotiated by the parties in the property settlement agreement, conditional, however, on Roy remaining in treatment and having negative alcohol screens forty-eight hours before any visitation.

We have no reason to doubt plaintiff's professed sobriety, and we appreciate counsel's passionate plea on his behalf. We applaud Roy's efforts to overcome his history of alcoholism and its associated violent behavior. Moreover, as we stated *supra*, our rendition of the evidence is not meant to be exhaustive. There is much in the record suggesting that Roy is a loving, caring father who, when able, has continued to provide emotional and financial support to his children. His fitness as a custodial parent was not an issue in these proceedings. Both parties agreed in the property settlement agreement that he was a fit and proper joint custodial parent. Although his relationship with Tyler may have been strained at times, the same cannot be said of his relationship with Melainy and Emma.

Nevertheless, plaintiff cannot completely escape his past—a past that includes frequent abuse of alcohol and several significant incidents of domestic violence. Clearly the trial justice did not err by relying on this evidence in making decisions about whether the interests of the minor children would be better served by living in Rhode Island or Indiana. Moreover, the trial justice appropriately considered present circumstances in making her determination. She found that defendant's desire to relocate was in good faith and motivated by the prospect of better employment and housing opportunities. More importantly, defendant was motivated by the presence of her parents in Indiana, whom the trial justice considered to be positive influences on the two minor children.

Under our jurisprudence, it is the trial justice who is in the best position to determine what factors may be relevant in a given case, and his or her discretion should not be unduly restricted. *Dupré*, 857 A.2d at 257. Although reasonable minds may differ on the appropriate evaluation of the evidence, we cannot say that the trial justice overlooked or misconceived material evidence, nor were her factual findings clearly wrong. As such, the Family Court's ruling that relocation of the minor children would be in their best interests will not be disturbed.

### B. Interim Relief

■ The plaintiff next contends the trial justice exceeded the scope of her authority by granting "interim relief" (*i.e.*, allowing defendant to relocate the minor children during the pendency of this appeal) in derogation of the automatic stay provision in Family Court Rule 62. The defendant counters that Rule 7 of the Supreme Court Rules empowers the Family Court trial justice to hear and grant such a request for interim relief.

■ Questions of law are reviewed *de novo* by this Court. *Carnevale v. Dupré*, 783 A.2d 404, 408 (R.I.2001). Like questions of statutory construction, the interpretation of court rules of procedure is a legal question for the court. *See Crowe Countryside Realty Associates, Co., LLC v. Novare Engineers, Inc.*, 891 A.2d 838, 840–41 (R.I.2006) (applying *de novo* review to the interpretation of Rule 26 of the Superior Court Rules of Civil Procedure); *In re James C.*, 871 A.2d 940, 942 n. 6 (R.I.2005) (applying *de novo* review to the interpretation of the Rhode Island Rules of Evidence).

■ It is true that when an appeal is taken from a Family Court judgment the

proceedings are generally stayed pending the outcome of the appeal, pursuant to Rule 62 of the Family Court Rules. " 'However, there are various exceptions to this general rule.' " *Koziol v. Koziol,* 720 A.2d 230, 232 (R.I.1998); *see, e.g., Centazzo v. Centazzo,* 556 A.2d 560, 563 (R.I.1989) (citing *Hurvitz v. Hurvitz,* 44 R.I. 243, 246, 116 A. 661, 662 (1922) (one exception to the automatic stay is that counsel fees may be awarded during the pending appeal)). In *Centazzo,* 556 A.2d at 563, we explained that one of those exceptions emerges from Rule 7 of the Supreme Court Rules, which "expressly authorizes a Family Court justice to make such orders as are necessary for the protection of the rights of the parties pending the appeal." *Id.* For instance, we have held that, under Rule 7, a Family Court justice may issue a final decree of divorce pending an appeal on other matters, such as equitable distribution or alimony. *Cardinale v. Cardinale,* 889 A.2d 210, 227 (R.I.2006) (citing *Koziol,* 720 A.2d at 232). We reasoned that to hold otherwise would be problematic because when one party is appealing an issue other than the decree of divorce itself, delaying the final decree of divorce may be detrimental to either party. *Koziol,* 720 A.2d at 232. As we noted in *Centazzo,* 556 A.2d at 563, Rule 7 is "couched in general language" and serves to prevent exploitation of the appellate process.

We are of the opinion that the trial justice did not exceed her authority in her order of interim relief granting defendant's request to relocate with her children while plaintiff's appeal was pending. In contested cases concerning the custody or placement of a child, a trial justice will necessarily have determined what outcome, in his or her judgment, is in the best interests of that child. From a practical perspective, allowing the automatic stay to prevent the relocation of the children pending appeal would mean that the decision made by the trial justice may not serve its purpose for an extended period. A stay might simply preserve a status quo that the trial justice has ruled not to be in the child's best interests. As an unfortunate but inescapable corollary of the careful and intensive judicial appellate process, including the preparation of parties' briefs, docketing and scheduling, and consideration by the Court, much time passes between a trial court decision and an appellate opinion. In the interim, before an appellate decision is reached, a stay might unreasonably defer realization of the best interests of the child. In this case, for instance, the Family Court justice issued her written relocation decision on July 30, 2007, and this Court was able to begin reviewing that decision in October 2008, meaning more than a full academic school year had passed.

█ Arguably, the purpose of Rule 7, protecting the rights of parties during the appellate process, is no more applicable than in the context of child relocation requests. To hold otherwise would fly in the face of the best interests of the child; it would serve to undermine the paramount concern of the court in child custody and relocation cases. Our Family Court rule providing automatic stay upon appeal is not absolute. Rule 7 is one of its various exceptions, and it provides our courts with the discretionary authority to issue orders necessary to protect the rights of the parties in a case pending appeal, including a suspension of the automatic stay in child-relocation cases.

## IV

### Conclusion

Accordingly, we affirm the orders of the Family Court and remand the record of the case thereto.