June 17, 2019

**Supreme Court**

No. 2018-47-Appeal.
(K 09-728)

Maurice J. Cusick          :

v.          :

Judith P. Cusick.          :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Maurice J. Cusick          :

v.                         :

Judith P. Cusick.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on May 9, 2019, on appeal by the plaintiff, Maurice J. Cusick (Maurice or plaintiff),[1] from a Family Court postjudgment order in favor of his former wife, Judith P. Cusick (Judith or defendant).  This appeal stems from Judith's motion seeking an order requiring Maurice to submit to limited genetic testing pursuant to Rule 35 of the Family Court Rules of Domestic Relations Procedure. On appeal, the plaintiff argues that, by ordering him to submit to genetic testing, the hearing justice violated his right to privacy and to due process, and also committed an abuse of discretion by relying on factual findings that, according to plaintiff, overlooked and misconceived material evidence and otherwise were clearly wrong.  For the reasons set forth in this opinion, we affirm the order of the Family Court.

---

[1] The plaintiff is a practicing attorney in Rhode Island.  He was represented by counsel at the hearing on defendant's Rule 35 motion and appeared *pro se* on appeal.

**Facts and Travel**

In this appeal, we are presented with an acrimonious post-divorce battle in the Family Court concerning the welfare of the parties' children.[2] In March 2017, plaintiff's former wife filed a Rule 35[3] motion seeking an order from the Family Court compelling plaintiff to submit to genetic testing for the benefit of the parties' minor children.[4] In March 2016, plaintiff was diagnosed with a genetic heart condition known as Brugada Syndrome, a genetic disorder, that poses significant risks including ventricular arrhythmias that can result in sudden death. It is undisputed that Brugada Syndrome is a hereditary disorder.

The motion was heard by a Family Court justice on July 14 and 21, 2017. Medical geneticist Mari Mori, M.D. testified about the preferred reasons for genetic testing for Brugada Syndrome. She explained the precautions that someone at risk for Brugada Syndrome must take, which include avoidance of environmental stimuli leading to irregular heartbeat, such as fever, high temperature locales, and certain medication. Additionally, Dr. Mori explained that genetic testing of plaintiff to determine whether his children are at risk for Brugada Syndrome is the

---

[2] For nearly a decade, commencing in November 2009, the courts have presided over the parties' contentious divorce proceedings.

[3] Rule 35 of the Family Court Rules of Domestic Relations Procedure provides, in pertinent part:

> "(a) **Order for Examination**. In an action in which the mental or physical condition or the blood relationship of a party, or of an agent or a person in the custody or under the legal control of a party, is in controversy, the court may order the party to submit to a physical or mental or blood examination by a physician or to produce for such examination the party's agent or the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

[4] The parties are the parents of four children, two of whom are minors.

preferred diagnostic path because, if the genetic change that plaintiff carries can be identified, then the children can be tested for that specific variant. Alternatively, Dr. Mori also explained that, if genetic testing of plaintiff is not undertaken, then a sodium blocker EKG can be used to diagnose the children; however, there is a high risk that this could produce a false-negative because an EKG change could develop over time.

The defendant was the next witness. When questioned why she wanted plaintiff to undergo genetic testing, defendant explained:

> "I am trying to get as much information as possible for the treating physicians of our children so that they can either be ruled out for Brugada Syndrome or get the medical care that would be necessary and appropriate. I don't want them to have to undergo annual testing. I don't want them to have to continue to live with the uncertainty of whether or not they have the diagnosis. I want to optimize the information flow so that they can get the medical care that would be necessary."

The defendant further testified about her concerns relating to their young son, who had been diagnosed with autism, and whether he could undergo a prolonged medical examination, as well as his ability to effectively communicate any internal symptoms he may experience, such as chest pains. She also explained that, since plaintiff was diagnosed with Brugada Syndrome, the children have become increasingly aware of their mortality and have expressed concerns about participating in sports and other activities.

The plaintiff also testified and, when asked why he refused to undergo this testing, he offered the following:

> "I have had many instances where things I have revealed to Judy have been used against me so I really don't want her involved in my medical condition. * * * I don't want to trouble the kids. If I had Brugada, I grew up in East Greenwich and I had no trouble all the way up into my 30's or 40's so I didn't think it was worth causing anxiety or trouble in the kids, and I also am not an advocate of giving up my genetic material for testing against my

wishes. I don't think that should be done unless I voluntarily want to do it and I do not."

The plaintiff also declared that he was opposed to genetic testing because, in his opinion, Brugada Syndrome is not a serious life-or-death situation. However, plaintiff also conceded that his medical treatment consists of a "loop recorder in [his] chest[,]" which is the size of "one of those memory sticks they put in computers," and "it transfers by wi-fi to a little desktop that [his] doctor] gets records [of] every day if something goes wrong[.]"

In a bench decision, the hearing justice granted defendant's Rule 35 motion and directed that plaintiff submit to the testing. In reaching this determination, the hearing justice balanced plaintiff's right to privacy against the best interest of the minor children, and found that the risk posed by Brugada Syndrome—namely, sudden death—to be "pretty serious." The hearing justice relied on a written statement by Kristen Lombardi, M.D., included with her affidavit, that "[g]enetic testing is preferable (in my opinion) for a first-degree relative prior to conducting [a sodium blocker EKG], as genetic testing is much less invasive."

The hearing justice also found that a test that requires the patient to lie still for six hours is invasive. Relying on the opinions of the three medical professionals, including the deposition testimony of plaintiff's treating physician, Ramin Davoudi, M.D., the hearing justice concluded that it was the opinion of the professionals that "the genetic testing would be less invasive and given the right result could enable these children to have no future testing whatsoever." Thus, the Family Court justice determined that "it is in the best interest of the children that the test as requested by the [d]efendant be ordered[.]" There were limitations specifically imposed to protect against unauthorized use of the test results.

The hearing justice ordered plaintiff to undergo the test "for the isolated purpose of providing a sample sufficient to confirm or rule out a diagnosis of Brugada Syndrome in the

parties' minor children." Moreover, defendant was restrained and enjoined from using the results for any other purpose. A written order entered on September 27, 2017, from which plaintiff timely appealed.[5]

## Standard of Review

"This Court will not disturb findings of fact made by the Family Court on the issue of custody and the best interests of the child unless the trial justice abused [his or] her discretion in making a particular award." *Vieira v. Hussein-Vieira*, 150 A.3d 611, 616 (R.I. 2016) (quoting *McDonough v. McDonough*, 962 A.2d 47, 52 (R.I. 2009)). As such, "[a]n award will be affirmed unless the trial justice's factual findings overlooked or misconceived material evidence or were clearly wrong." *Id.* (quoting *McDonough*, 962 A.2d at 52). "We have recognized that 'it is the trial justice who is in the best position to determine what factors may be relevant on a case-by-case basis, and his or her discretion in this regard should not be unduly constrained.'" *McDonough*, 962 A.2d at 52 (brackets omitted) (quoting *Dupré v. Dupré*, 857 A.2d 242, 257 (R.I. 2004)).

## Violation of Right to Privacy and Right to Due Process

On appeal, plaintiff argues that ordering him to submit to genetic testing violates his constitutional rights to privacy and due process. "[T]his Court reviews all questions of law presented in an appeal from the Family Court *de novo*." *O'Donnell v. O'Donnell*, 79 A.3d 815, 820 (R.I. 2013).

Fatal to plaintiff's challenges, however, is the fact that he failed to raise these arguments to the trial justice. Consequently, these issues are not properly before this Court. "This Court

---

[5] On October 16, 2017, plaintiff filed a motion for a stay in the Family Court. On December 5, 2017, the motion was heard and denied from the bench. On December 26, 2017, plaintiff filed a motion for a stay with the Supreme Court, which was granted on March 5, 2018.

has staunchly adhered to the 'raise-or-waive' rule." *Rohena v. City of Providence*, 154 A.3d 935, 938 (R.I. 2017). Thus, "[i]t is well settled that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." *Id.* (quoting *State v. Bido*, 941 A.2d 822, 828-29 (R.I. 2008)).

As grounds for his objection to defendant's Rule 35 motion, plaintiff challenged the efficacy of the test and argued that "any said genetic testing is intrusive, and is not clinically justified as no pathogenic variant was identified in the minor children that would warrant further genetic testing of the [p]laintiff." Before this Court, however, plaintiff attempts to persuade us that he asserted his constitutional rights to privacy and due process, and points to his testimony about lack of consent as support. On the witness stand, plaintiff declared: "I also am not an advocate of giving up my genetic material for testing against my wishes. I don't think that should be done unless I voluntarily want to do it and I do not." This, however, is not an argument of constitutional dimension, given that it does not address privacy or the Due Process Clause. It goes without saying that the very due process that plaintiff asserts he was denied was afforded to him by the hearing justice during the Rule 35 hearing.

"We have recognized that an exception to the raise-or-waive rule arises when basic constitutional rights are involved; however, 'the alleged error must be more than harmless, and the exception must implicate an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial.'" *In re Miguel A.*, 990 A.2d 1216, 1223 (R.I. 2010) (quoting *State v. Breen*, 767 A.2d 50, 57 (R.I. 2001)). The plaintiff's arguments do not meet this exception and are deemed waived.

**Abuse of Discretion**

Next, plaintiff argues that the hearing justice abused his discretion by: (1) relying on allegedly fraudulent medical evidence and (2) wrongfully overlooking relevant evidence. Specifically, plaintiff asserts that the hearing justice wrongfully relied on what plaintiff contends was a false affidavit of Dr. Lombardi that was introduced into evidence. The plaintiff further argues that the hearing justice failed to discuss or explain the opinion of plaintiff's physician, Dr. Davoudi, and, because, according to plaintiff, the hearing justice was "swayed by the [c]ourt's personal friendship with a neighbor, Dr. Lombardi," otherwise overlooked or misconceived Dr. Davoudi's evidence.

Turning first to plaintiff's challenge regarding the weight the hearing justice accorded to Dr. Lombardi's affidavit, we deem this contention without merit. The record before us clearly establishes that the hearing justice disclosed that Dr. Lombardi was a neighbor and an acquaintance of his family. This fact was spread upon the record in this case. Thus, we are confronted with an unambiguous waiver by a litigant—who is a member of the bar—as well as his trial counsel. At the outset, the hearing justice explicitly addressed Dr. Lombardi's status with plaintiff and his counsel, stating: "I have said before that Dr. Lombardi is a neighbor and a personal friend of my family. You are aware of that. I know you are trying to seek to introduce her affidavit as well. Does that provide an issue for your client[?]" The plaintiff's counsel responded: "It was provided to us, Your Honor. We have no objection. * * * We are aware of Dr. Lombardi being your neighbor." Furthermore, upon being informed that defense counsel filed the medical records and accompanying affidavit of Dr. Lombardi pursuant to G.L. 1956 § 9-19-27, plaintiff's counsel was questioned as to whether he objected to the affidavit being used as an exhibit, to which counsel responded: "No."

Having failed to raise any objection to the introduction of Dr. Lombardi's affidavit, plaintiff cannot now challenge its contents or the weight the hearing justice accorded her opinion. Because plaintiff represented in open court that he had no objection to this evidence, he has waived the right to contest it on appeal.

Finally, after careful review of the operative order in this case, we are satisfied that the hearing justice made sufficient findings of fact and did not overlook or misconceive any evidence. We are of the opinion that the hearing justice carefully balanced the interests of the father in protecting his privacy with that of the children. His conclusion that genetic testing was in the best interest of the children is supported by the evidence. Further, the order under review is both balanced and reasonable. We see no reason to disturb the findings of the hearing justice.

### Conclusion

For the reasons set forth in this opinion, we affirm the order of the Family Court. The record shall be remanded to the Family Court.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Maurice J. Cusick v. Judith P. Cusick. |
| **Case Number** | No. 2018-47-Appeal.<br>(K 09-728) |
| **Date Opinion Filed** | June 17, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Kent County Family Court |
| **Judicial Officer From Lower Court** | Associate Justice Stephen J. Capineri |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Maurice Cusick, Pro Se<br>For Defendant:<br><br>Stephanie P. McConkey, Esq. |